# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

REPASS v. MOORE.

JUNE 21, 1900.

Absent, Riely, J.*

1. SUBROGATION—*Taxes—Voluntary Payment by Treasurer.*—A county
treasurer who voluntarily pays the State and county taxes of a
tax-payer in his hands for collection, without any previous request
or subsequent promise of indemnity, and with no assignment of
the tax lien (if it be capable of assignment) is not entitled to be
subrogated to the liens of the State and county for the taxes so
paid. The doctrine of subrogation is not enforced in favor of mere
volunteers.

Appeal from a decree of the Circuit Court of Wythe county,
pronounced March 14, 1900, in the chancery suit of *Bank of
Wytheville* v. *Moore and Others,* wherein appellant asserted a
lien for taxes paid by him.

*Affirmed.*

The opinion states the case.

*C. B. Thomas* and *W. B. Kegley,* for the appellant.

*J. C. Wysor,* for the appellee.

KEITH, P., delivered the opinion of the court.

The case before us is the sequel of that reported in 96 Va.
147. Repass, who was treasurer of Wythe county, paid certain

*Judge Riely was prevented by sickness from attending this term.

taxes due by Moore for the years 1884, 1885, 1886, and asked to be subrogated to the lien of the county and State. The case was then reversed and remanded to the Circuit Court that Repass might be given an opportunity to prove his claim, the court being of opinion that, if he paid the taxes under circumstances which entitled him to be subrogated to the rights of the State and county, it would be gross injustice to shut him off from the opportunity of producing such proof.

· The question before us has never been directly decided by this court. In *Lipscomb* v. *Littlepage,* 1 H. & M. 453, a sheriff who indulged the tax-payer, who in consideration thereof agreed to indemnify him by paying all damages which the Commonwealth might recover in consequence of his failing in due time to pay the taxes into the treasury, recovered a judgment at law for such taxes, with lawful interest. The defendant in this judgment came into a court of equity alleging that the verdict at common law was obtained by surprise; that he could, as he thought, have satisfied the jury that nothing was due, and he therefore prayed an injunction to the judgment, and for general relief. The chancellor, being of opinion that it was contrary to public policy to permit a sheriff to recover for taxes paid by him in order to indulge the tax-payer, perpetuated the injunction to the judgment. This decree was reversed in this court, consisting at the time of three judges, of whom Judge Tucker dissented in an earnest and able opinion. He considered the agreement on the part of the tax-payer to indemnify the sheriff for the indulgence extended him in the collection of taxes a contract in violation of public policy. "It is," said he, "destructive of the revenue, ruinous to all public creditors, pernicious to the public credit, and fatal to the energies of the Commonwealth, under the greatest emergencies. The record accordingly exhibits a series of judgments against the high sheriffs for whom he acted, for upwards of £19,500, an evil of sufficient magnitude to shew the pernicious consequences of such

illegal and nefarious contracts; if, indeed, such a one ever was
made on the part of Lipscomb, of which there is no proof what-
ever. No court of equity that understood even the elements of
its functions could sustain a suit founded on such a contract."

The majority of the court did not seem to controvert this
view of the case, but rested their conclusion upon the fact that
there had been a trial at law in which this defence might have
been made, and that no sufficient reason appeared why a court
of equity should disturb the judgment then obtained.

A kindred question was presented in the case of *Clevinger* v.
*Miller*, 27 Gratt. 740. It was there held that a sheriff or other
officer who pays an execution in his hands for collection, without
an assignment at the time of the judgment or debt on which it
is founded, is not entitled to be subrogated to the lien of the
creditor whose debt he has paid as against other creditors having
judgment by liens or otherwise. Judge Staples, discussing the
general doctrine of subrogation, states that at law payment ex-
tinguishes the debt, and every security given for it; that a
court of equity will interpose to keep alive the debt in certain
cases; that a surety is subrogated to all the rights and remedies
of the creditor, and entitled to enforce his liens, priorities and
means of payment. He points out that the doctrine of subroga-
tion does not stand upon contract, express or implied, but upon
principles of natural justice; that as it is purely a creature of
equity it is only enforced in those cases where its application
is just, and sanctioned by the obligations of good faith and
sound policy. He declares, at page 741, that "it is only en-
forced in behalf of sureties and others who are required to pay
in *order* to protect their own interests, and never in favor of
mere volunteers." He quotes with approval the language of
Judge Marshall in *Bank* v. *Winston*, 2 Brock. R. 254, who said:
"There was no case in which the doctrine of subrogation has
been enforced in favor of one not bound by the original contract

who discharged it as a volunteer. He would not say it might not be done; but if it may, equity will consider all the circumstances, and impose equitable terms."

Judge Staples reviews a number of cases in other courts in which it has been held that "an officer charged with the collection of moneys due individuals or the government, who pays the taxes or debts of another person, cannot maintain an action to recover the same in the absence of a prior request, or a subsequent promise," and upon a careful consideration of them he concludes that a sheriff could not, in that case, be subrogated to the lien of the creditor, because there was no duty imposed upon him to pay the debt, nor any assignment to him by the creditor.

In *Sherman* v. *Shaver*, 75 Va. 1, Judge Burks, speaking of the principle of subrogation, says that it is very comprehensive, and is broad enough to include every instance where one pays a debt for which another is primarily liable, and that in equity and good conscience should have been discharged by him. He quotes with approval from the opinion in *Wilks* v. *Harper*, 2 Barb. Ch. R. 338, where it said: "Wherever one is liable in person or estate to a charge which ought to be borne primarily by another or his estate, the person first named will have the equity of a surety, and he is entitled to the securities and remedies of a creditor as a means of carrying that equity into effect." Judge Burks then continues: "Under the influence of these liberal principles, which appear to me to be sound and just, I am not prepared to say, than an officer, who for default has been compelled to pay the debt of another, is not, in any case, under any circumstances, entitled to relief by subrogation as against the debtor alone. There may be cases in which no fraud is imputable to the officer—no moral turpitude of any description—no semblance of bad faith or even gross negligence—cases in which he is held simply for the failure to exercise the exact care and diligence which the law requires—cases,

it may be, in which his liability has been incurred by honestly, but indiscreetly reposing in the debtor a confidence which he knavishly abused to his own gain—in which the parties are not *in pari delicto.* And yet, even in such cases, considerations of public policy may, perhaps, require the denial to the officer of any active assistance by the courts against the debtor, though the interests of third parties are not involved."

Every consideration of public policy which requires a sheriff to collect money due upon an execution in his hands, or to levy and sell, and pay the proceeds into court or to the plaintiff, or make prompt return upon it, applies with equal force to the officer whose duty it is to collect the taxes due to the Commonwealth. The course which he should pursue is clearly marked out by the statute law. He is clothed with ample power to discharge it, and he and his sureties can incur no liability unless he is guilty of a voluntary deviation from the prescribed course of duty.

In the case before us, the treasurer, without any previous request or subsequent promise of indemnity, with no assignment of the tax lien (if it be capable of assignment), voluntarily paid the tax which he now seeks to recover, into the treasuries of Wythe county and the State of Virginia. There was certainly no such duty imposed upon him by law. He was under no obligation whatever, and was bound in no way, to pay or advance the taxes. It was his voluntary act in derogation of the duty imposed upon him by law, and he is, therefore, not within the broadest and most comprehensive definition of the right of subrogation as stated by any text writer or decided case that has been brought to our attention. We will not undertake to say that a case may not arise in which the right of subrogation would be enforced for the protection of a collector of taxes. It is not necessary, and would, therefore, be unwise and improper to do so. We prefer to walk in the path indicated

Opinion.

by the decisions which we have cited, and refrain from adjudicating a question not involved in the controversy before us.

We are of opinion that the circumstances shown in evidence in this case do not warrant the relief for which appellant seeks, and the decree of the Circuit Court is affirmed.

*Affirmed.*