# �civmond,

## HINMAN V. MASON.

January 20, 1927.

Reheard January 19, 1928.

1. SUBROGATION—*Volunteer—A Father Paying a Debt of his Son who was Threatened with Prosecution.*—A partnership engaged in the automobile business became hopelessly insolvent and was indebted to a bank in a large sum represented by forged or disputed notes. The copartners were respectively the cashier and the assistant cashier of the bank and, under threatened prosecution, the fathers of the copartners arranged a settlement or an adjustment of the indebtedness to the bank.

  *Held:* That the fathers of the copartners were not creditors of the firm by right of subrogation as there was no legal obligations upon them to pay the debt either as sureties or as protectors of their own interests.

2. SUBROGATION—*When One Entitled to be Subrogated—Interest in Subject Matter.*—Subrogation depends upon the payer's relationship to the debt. If his interest in the subject matter is imperiled in any legal sense, then he is entitled, upon the payment of the debt, to be subrogated to all the rights of the creditor.

3. ASSIGNMENTS—*Partnership—Father Paying Debt of his Son, a Copartner, when Threatened with Prosecution—Case at Bar.*—A partnership engaged in the automobile business became hopelessly insolvent and was indebted to a bank in a large sum represented by forged or disputed notes. The copartners were respectively the cashier and assistant cashier of the bank and, under threatened prosecution, the fathers of the copartners arranged a settlement or an adjustment of the indebtedness to the bank. There was no written assignment of the debt of the firm to the fathers of the copartners. There was no delivery of the entire evidences of debt. There was no explicit testimony that the debt was assigned. There was no evidence that the sons ever requested their respective fathers to discharge their indebtedness to the bank.

  *Held:* That the fathers were volunteers in the payment of the bank debt and that there was no assignment of their debt to them.

4. ASSIGNMENTS—*Intention.*—Assignment is the act of the parties and
   depends generally upon intention.

Appeal from a decree of the Circuit Court of Accomac
county, in a suit to wind up a copartnership.

*Affirmed.*

The opinion states the case.

*George L. Doughty, Jr.,* and *James E. Heath,* for the
appellants.

*J. Harry Rew, Mapp & Mapp, Warner Ames, Stew-
art K. Powell,* and *Benjamin T. Gunter,* for the appel-
lees.

CAMPBELL, J., delivered the opinion of the court.

This suit was instituted to settle the affairs of a
copartnership. In the year 1914, E. Bernard Hinman
and Walter N. Mason entered into a copartnership
under the firm name and style of Parksley Auto Com-
pany, for the purpose of buying and selling automobiles,
conducting a garage, and of dealing in automobile
supplies and accessories.

The copartnership was not a successful business
venture. On the 3d of February, 1916, the concern
was hopelessly insolvent. Its chief creditor was the
Parksley National Bank, of Parksley, Virginia. To
this institution it was indebted to the extent of over
forty-one thousand dollars. Of this amount, the
record shows that the sum of $7,662.50 was repre-
sented by forged or disputed notes; some of the other
involved items of indebtedness consisted of a deposit
slip in the handwriting of E. B. Hinman, charged to

the account of a Mrs. S. A. White; a check drawn by W. N. Mason, attorney for Susan A. White; a deposit slip carried in the drawer as cash; two debit slips aggregating $3,306.90 and a note executed by Hinman and Mason, covering an indebtedness to the Hallwood National Bank of $2,525.78.

Both Hinman and Mason were connected with the Bank of Parksley, one as cashier and the other as assistant cashier.

All of this particular indebtedness represented either forged or disputed paper, or false entries or pretenses. There were other items of indebtedness evidenced by discounted paper.

This state of affairs in the bank came to light when Mason was removed as cashier and after an audit of the books of the bank. So flagrant had been the conduct of these two trusted employees, that they were faced with criminal proceedings in the Federal court.

On the night of the 3rd of February, 1916, a settlement or adjustment of this indebtedness was made by Emory D. Hinman, father of E. B. Hinman, and H. Thomas Mason, father of W. N. Mason. On this occasion the bank turned over to Hinman, Sr., and Mason, Sr., the forged or disputed notes and other questionable evidences of debt held by it against the firm, amounting to $19,422.50. Of the paper which had been discounted, the bank retained the sum of $7,500.00 and treated this amount as so much cash in the settlement.

While the affairs of the copartnership were in this condition, Hinman, Jr., brought suit against Mason, Jr., to wind up and settle the partnership affairs. Receivers were appointed and suits were instituted against some of the firm's debtors.

In the meantime, an effort was made by the Federal

banking authorities to indict both Hinman, Jr., and Mason, Jr. This effort was successful as to Mason, Jr. He pleaded guilty to one count of the indictment returned against him, and paid the fine and costs assessed.

The suit to wind up the copartnership dragged along slowly, until October 9, 1924, when James C. Nelson was appointed a commissioner to take evidence and report upon the correctness of the report filed by Roy D. White, surviving receiver, to which numerous exceptions had been filed.

On the 16th of December, 1924, the commissioner filed his report, finding, among other things, that H. T. Mason was a creditor of the Parksley Auto Company in the principal sum of $17,725.36; that E. D. Hinman was a creditor of the company in the principal sum of $13,924.36; and that this indebtedness grew out of the settlement with the bank.

The Parksley Coal and Supply Company and the Ajax Rubber Company duly excepted to that part of the commissioner's report finding that Mason, Sr., and Hinman, Sr., were creditors of the insolvent company.

The court being of the opinion that the payments made by Mason, Sr., and Hinman, Sr., to the Parksley National Bank on February 3, 1916, were voluntary payments, without legal obligation or compulsion, sustained the exception to the report and decreed that Mason, Sr., and Hinman, Sr., were not creditors of the company.

This action of the court is the primary question for determination. The whole case hinges on whether or not Hinman, Sr., and Mason, Sr., are creditors either by assignment of the claim of the bank against the company, or by right of subrogation.

## ERRATA

In the case of *Hinman* v. *Mason*, 149 Va. 267, the word "not" should be inserted at the end of the first line on page 271.

[1, 2] We find no difficulty in holding that they are
creditors by right of subrogation.   There was no legal
obligation upon them to pay the debt, either as sure-
ties or as protectors of their own interests.   Subroga-
tion depends upon the payer's relationship to the debt.
If his interest in the subject matter is imperiled in any
legal sense, then he is entitled, upon the payment of
the debt, to be subrogated to all the rights of the
creditor.

In *Clark* v. *Moore*, 76 Va. 262, Judge Burks, Sr.,
said: "It is contended by the creditors of J. T. Clark
that this judgment is a subsisting lien on the lands of
the debtor, prior and paramount to the lien of the
deed of trust, and not disturbed or affected by the
deed.   It does not appear that J. T. Clark was in any
way liable for this judgment or the debt represented
by it.   If, therefore, he paid it, either voluntarily or at
the request of his father, without any agreement or
understanding that he was to have the benefit of the
judgment, or that it was to be transferred or assigned
to him, the debt was satisfied by the payment, and the
lien extinguished both at law and in equity.   There
would be no ground for substitution in such a case.
That equitable principle, in the absence of special
agreement, applies only where payment is made by one
who is surety for the debt or is compelled to pay it in
order to protect his own interest."   See *Janney's
Ex'or* v. *Stephen's Admr.*, 2 Pat. & H. 11; *Burton* v.
*Mill, et al.*, 78 Va. 468; *Repass* v. *Moore*, 98 Va. 377,
36 S. E. 474; *Clevinger* v. *Miller*, 27 Gratt. (68 Va.) 740.

[3] Let us now consider the question of assignment.
There was no written assignment of the debt.   There
was no delivery of the entire evidences of debt.   The
record fails to show the employment of the word
"assignment" in any way at the midnight conference

held on the 3rd of February. No one testifies explicitly
that the debt was assigned. The nearest approach
thereto is the evidence of Hinman, Sr., that he "thought"
the notes retained by the bank as collateral belonged
to the company and that upon one occasion, some
while after the transaction, he went to the bank and
requested that they be turned over to him. It does
appear that such of these notes as were collectible
were charged by the commissioner to the receivers.
There is not the slightest evidence that either Hinman,
Sr., or Mason, Sr., ever filed any claim with the
receivers of the company. In fact, no claim was made
against the company until eight years after the claim
of the bank was settled.

. Mason, Sr., has never testified in the case, though he
was present when the settlement was effected, nor has
he filed any claim as a creditor.

An evidential fact against the contention of assign-
ment is the exception filed by these claimants, to the
report of the surviving receiver, in regard to the col-
lateral notes: " * * * and your exceptors here
state and˙ charge that said surviving receiver was
negligent and culpable in failing to prosecute a suit on
the Circuit Court of Accomac county, Virginia, for
the purpose of obtaining possession of said notes."

[4] There is nothing in the record to indicate that
either Hinman, Jr., or Mason, Jr., ever requested their
respective. fathers to discharge their indebtedness to
the bank, or that either of the fathers ever took from
their sons any evidence of the debt. "Assignment is
the act of the parties and depends generally upon
intention." *Gatewood* v. *Gatewood,* 75 Va. 407. There
is no concrete evidence that assignment was intended.

While it is true that equity looks at the substance of a
transaction and not at its mere form, and that no

particular form of words is necessary to constitute a valid assignment in equity, yet we are bound to conclude that under the facts and circumstances of this case, as exhibited by the record, the claimants were volunteers in the payment of the bank debt and the decree of the trial court is plainly right and should be affirmed.

## ON REHEARING.

PER CURIAM: This case was decided by this court by an opinion handed down on January 20, 1927, which affirmed the decree of the Circuit Court of Accomac county. Consequently, a petition to rehear was filed by the appellants, and at the March, 1927, term a rehearing was granted. Briefs were filed by the parties, and the case again orally argued at the January, 1928, term.

After careful and mature reconsideration. of the questions raised, we are of opinion to adhere to our former decision; and the decree of the trial court is therefore affirmed.

*Affirmed.*