# Wytheville.

## H. M. DREWRY, TREASURER V. BAUGH AND SONS, INC., ET ALS.

### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. TAXATION—*Tax Liens Statutory.*—Constitution 1902, section 168, provides that all taxes shall be levied and collected under general laws. It follows that there are no liens for taxes except as provided by statute.

2. TAXATION—*Assessments, Levies and Collections Must Conform to Statute—Distress—Summary Remedies.*—In Virginia taxes can only be assessed, levied and collected in the mode pointed out by the statute. When the State or a county has assessed and levied a tax, they are severally clothed with power to take the personalty by distress, and the realty by sale, for taxes in the most summary manner.

3. TAXATION—*Failure of Taxpayer to Pay His Taxes—Duty of County Treasurer.*—Under Code of 1924, section 2410, the treasurer is required upon failure of the taxpayer to pay his taxes after being called upon to make settlement, to "proceed to collect them by distress or otherwise."

4. TAXATION—*Lien of Taxes—County Treasurer Settling with Auditor of Public Accounts and Later Levying on Property of the Taxpayer—Case at Bar.*—The purpose of the instant suit was to determine and settle the priorities of the claims of the lien creditors of one G. against his personal property. In the year 1925 G. was unable to pay his taxes and the county treasurer settled with the Auditor of Public Accounts for these taxes on June 15, 1926, and later levied on certain property of G. for the payment of the same. The treasurer assigned as error that the trial court erred in holding that the other lien-holders took priority over the treasurer, who had levied for his taxes within the period of time prescribed by section 2440 of the Code of 1919. When sections 2440 and 2443 are read and construed in the light of and along with sections 2454, 2271 and 2493, it is clear that the treasurer had the right, at any time within one year from June 15, 1926, to distrain the goods and chattels in the county which then belonged to the taxpayer, for the taxes and levies assessed against

him, for which the treasurer had accounted to the Auditor of Public Accounts and the county authorities. But there is no provision in the statute which gives a lien on *all* of the taxpayer's personal property for the amount of taxes due by him. Such a lien can be acquired only by distraining or levying upon the property; except there is a lien on each specific piece of personal property for the taxes and levies *due thereon.*

5. TAXATION—*Lien of Taxes—Mortgages and Deeds of Trust.*—No deed or mortgage upon goods and chattels will prevent the same from being sold for taxes against the grantor in such deed or mortgage, while such goods and chattels remain in the grantor's possession; nor will any such deed or mortgage prevent the goods and chattels from being distrained and sold for the taxes and levies assessed *thereon,* no matter in whose possession they may be found.

6. TAXATION—*Lien of Taxes—Subrogation—County Treasurer who has Settled with Auditor of Public Accounts—Case at Bar.*—In the instant case a county treasurer made settlement with the Auditor of Public Accounts on June 15, 1926, for the taxes of a taxpayer for the year 1925, which the taxpayer was unable to pay, and later levied on certain property of the taxpayer for the payment of the same. In a suit to determine the priorities of lien creditors of the taxpayer against his personal property, it was contended by the treasurer that the court erred in holding that the treasurer was not subrogated to the rights of the Commonwealth, even though he had made the levy on the property of the taxpayer within the period of time prescribed by section 2440 of the Code of 1919. Upon the treasurer's accounting to the Auditor of Public Accounts for the taxes and levies, the taxpayer became his debtor, and section 2440 of the Code of 1919 authorized him to distrain the property of the taxpayer for the amount accounted for. The statute defines his rights in the premises. The treasurer was not compelled to pay the taxes for the taxpayer and therefore was not subrogated to the rights of the Commonwealth.

7. TAXATION—*Lien of Taxes—Treasurer Accounting to the Auditor of Public Accounts for Taxes which the Taxpayer was Unable to Pay—Priority of Execution Creditor—Case at Bar.*—In the instant case a county treasurer made settlement with the Auditor of Public Accounts on June 15, 1926, for taxes for 1925, which the taxpayer was unable to pay, and later on the 10th and 12th of January, 1927, levied on certain property of the taxpayer for the payment of the same. A creditor of the taxpayer obtained judgment against him on January 3, 1927, and on the same day execution was issued and placed in the hands of the sheriff for collection. The property levied on by the treasurer was also levied on by the creditor under the execution mentioned. No part of the taxes for which the treasurer settled with the Auditor of Public Accounts was due upon the property levied upon.

*Held:* That the execution was a lien on the taxpayer's goods and chattels from the moment it went into the officer's hands to be levied, and had priority over the lien which the treasurer acquired by his levy for taxes.

8. SALES—*When Title Passes—Sale of Peanuts—Weighing and Measuring— Case at Bar.*—The purpose of the instant suit was to determine and settle the priorities of the claims of the lien creditors of one G. against his personal property. G. being unable to pay his taxes for 1925, the county treasurer made settlement with the Auditor of Public Accounts for the taxes on June 15, 1926, and later on January 10 and 12, 1927, levied on 140 bags of peanuts on a farm of G.'s for the payment of the same. On the 26th day of December, 1926, G. agreed to sell appellees his entire crop of peanuts for 1925. The treasurer contended that the title to the peanuts had not passed to the purchaser because they were in the possession of G. and had not been weighed, set aside and delivered to the purchaser at the time the treasurer's levy was made. The purchaser contended that the peanuts had been set aside and the price ascertained, and that the weighing was not essential to the passing of the title, and that the contract of sale showed that the parties intended that the title should pass before the peanuts were weighed or delivered. Both seller and buyer testified as to the sale of the peanuts and G. testified that the peanuts "were specific and had been identified and all ready for loading," and that he considered the title had passed.

*Held:* That it clearly appeared from the evidence that the title to the peanuts had passed to the purchaser before the treasurer made his levy.

9. TAXATION—*Tax Lien—Treasurer Settling with Auditor for Taxes which Taxpayer was Unable to Pay—Subrogation—Case at Bar.*—The purpose of the instant suit was to determine and settle the priorities of the claims of the lien creditors of one G. against his personal property. G. was unable to pay his taxes for 1925 and the county treasurer made settlement with the Auditor of Public Accounts for these taxes on June 15, 1926, and levied on certain property of G. for the payment of the same. It was the contention of the treasurer that he was subrogated to the rights of the Commonwealth, as he had levied upon the property of the taxpayer within the period of time prescribed by section 2440 of the Code of 1919.

*Held:* That if the treasurer were subrogated to the rights of the Commonwealth, it would avail him nothing in the instant case, as it appeared that the liens of G.'s other creditors took priority over the lien created by the levy of the treasurer for taxes.

Appeal from a decree of the Circuit Court of Southampton county. Judgment for complainants. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*John M. Britt* and *R. E. L. Watkins*, for the appellant.

*Wm. M. Birdsong, Junius W. Pulley* and *Chas. W. Davis*, for the appellees.

WEST, J., delivered the opinion of the court.

In the year 1925, James T. Gillette was operating ten farms in Southampton county, Virginia. He entered into many financial obligations, and being unable to meet them was embarrassed by the efforts of his creditors to secure settlements of their claims.

He was unable to pay his taxes for 1925. H. M. Drewry, treasurer of Southampton county, made settlement with the Auditor of Public Accounts for these taxes on June 15, 1926, and later levied on certain property of Gillette for the payment of the same.

The purpose of this suit is to determine and settle the priorities of the claims of the lien creditors of James T. Gillette against his personal property, and to subject the property to the payment of such debts.

The evidence was taken in open court. Upon a final hearing upon the pleadings and the evidence, the judge of the trial court entered a decree on April 6, 1927, determining the priorities of the various liens, and adjudicating the rights of the parties accordingly. From that decree H. M. Drewry, treasurer of Southampton county, was allowed an appeal to this court.

The petitioner, H. M. Drewry, treasurer, makes four assignments of error:

"1. The court erred in holding that the other lien-holders took priority over the treasurer of Southampton county, Virginia, who had levied for his taxes within the period of time prescribed by section 2440 of the Code of Virginia, 1919.

"2. The court erred in holding that the treasurer of Southampton county, Virginia, was not subrogated to the rights of the Commonwealth of Virginia, even though he had made the levy on the property of the taxpayer within the period of time prescribed by section 2440 of the Code of Virginia.

"3. The court erred in holding that the lien created by the *fieri facias* on the Sebrell-Wade Company judgment was a lien prior to the lien created by the levy of the treasurer of Southampton county for taxes.

"4. That the court erred in holding that the sale of peanuts to T. H. Birdsong and Company and a delivery of the same after the levy of the treasurer of Southampton county, Virginia, constituted a complete sale and defeated the levy of the said treasurer for taxes, even though said peanuts had not been weighed or delivered to the said T. H. Birdsong and Company and the value thereof ascertained."

[1] The Virginia Constitution, section 168, provides that all taxes shall be levied and collected under general laws. It follows that there are no liens for taxes except as provided by statute.

[2] In *Marye* v. *Diggs*, 98 Va. 749, 37 S. E. 315, 51 L. R. A. 902, the court says: "In Virginia taxes can only be assessed, levied and collected in the mode pointed out by the statute. When the State or a county has assessed and levied a tax, they are severally clothed with power to take the personalty by distress,

and the realty by sale, for taxes in the most summary manner.''

[3] Under Code of 1924, section 2410, the treasurer is required upon failure of the taxpayer to pay his taxes after being called upon to make settlement, to "proceed to collect them by distress or otherwise."

[4, 5] *First Assignment.*    It is contended by the treasurer of Southampton county that having made his levy within the period of time prescribed by section 2440, his claim has priority over all other liens upon the property.

Sections 2440 and 2443 provide as follows:

Section 2440.    "A treasurer may distrain for taxes and levies for which he has accounted to the Auditor of Public Accounts and the county authorities, respectively, at any time within one year after the period fixed by section twenty-four hundred and twelve of this Code for the final settlement with the Auditor of Public Accounts for State taxes."

Section 2443.    "No deed of trust or mortgage upon goods or chattels shall prevent the same from being distrained and sold for taxes and levies against the grantor in such deed while such goods and chattels remain in the grantor's possession; nor shall any such deed prevent the goods and chattels conveyed from being distrained and sold for taxes and levies *assessed hereon*, no matter in whose possession they may be found."    (Italics ours.)

Code, section 2454, reads in part as follows: "There shall be a lien upon all real estate for the taxes assessed, and county, city and town levies assessed thereon, and interest upon such taxes and levies, at the rate of six per centum per annum, from the fifteenth day of June, in the year after which the same may have been assessed, for the period of five years, unless sooner paid. * *''

Section 2271 provides: "All real estate, except such as is exempted by the following section, shall be subject to such annual taxation as may be prescribed by law, and there shall be a lien on such real estate for the payment of the taxes and levies imposed thereon, hereafter assessed, prior to any other lien or encumbrance thereon; which lien, in addition to existing remedies for the collection of taxes and levies, shall be enforceable by suit in equity; and there shall be a further lien upon the rent of said real estate, whether the same be in money or in kind, for taxes of the current year.    *    *    *."

Section 2439 provides, in part, as follows: "Any goods or chattels in the corporation or county belonging to the person or estate assessed with taxes or levies, may be distrained therefor by the treasurer, sheriff, sergeant, constable, or collector. In all cases property subject to levy or distress for taxes shall be liable to levy or distress in the hands of any person *for taxes thereon.    *    *."    (Italics ours.)

When sections 2640 and 2443 are read and construed in the light of and along with the other sections, *supra*, it is clear that the law gave the treasurer the right, at any time within one year from June 15, 1926, to distrain the goods and chattels in the county of Southampton which then belonged to the taxpayer, for the taxes and levies assessed against him, for which the treasurer had accounted to the Auditor of Public Accounts and the county authorities.

No deed of trust or mortgage upon goods and chattels will prevent the same from being sold for taxes against the grantor in such deed or mortgage, while such goods and chattels remain in the grantor's possession; nor will any such deed or mortgage prevent the goods and chattels from being distrained and sold for the taxes

and levies assessed *thereon*, no matter in whose possession they may be found.

It is true that taxes due upon real estate constitute a lien thereon and that they may be collected by distress or by suit in equity. But we find no provision in the statute which gives a lien on all of the taxpayer's personal property for the amount of taxes due by him. Such a lien can be acquired only by distraining or levying upon the property; except there is a lien on each specific piece of personal property for the taxes and levies *due thereon*. As will be hereafter seen, the lien of the execution creditor has priority over the lien of the treasurer.

[6] *Second Assignment.* The appellant contends that he was subrogated to the rights of the Commonwealth of Virginia even though he had made the levy on the property of the taxpayer within the period of time prescribed by section 2440 of the Code.

With this contention we cannot concur. If the treasurer chooses to settle with the Auditor of Public Accounts and the county authorities, respectively, for taxes which he has not collected, and the taxpayer fails to reimburse him, he may, at any time within a year of the time for the settlement with the Auditor for State taxes, look to section 2440 for redress. Upon the treasurer's accounting to the Auditor of Public Accounts for the taxes and levies, the taxpayer becomes his debtor, and section 2440 authorizes him to distrain the property of the taxpayer for the amount accounted for. The statute defines his rights in the premises.

He was not compelled to pay the taxes for Gillette and therefore was not subrogated to the rights of the Commonwealth.

In the case of *Repass* v. *Moore*, 98 Va. 377, 36 S. E. 474, this court said:

"Every consideration of public policy which requires a sheriff to collect money due upon an execution in his hands, or to levy and sell, and pay the proceeds into court or to the plaintiff, or make prompt return upon it, applies with equal force to the officer whose duty it is to collect the taxes due to the Commonwealth. The course which he should pursue is clearly marked out by the statute law. He is clothed with ample power to discharge it, and he and his sureties can incur no liability unless he is guilty of a voluntary deviation from the prescribed course of duty.

"In the case before us, the treasurer, without any previous request or subsequent promise of indemnity, with no assignment of the tax lien (if it be capable of assignment), voluntarily paid the tax which he now seeks to recover into the treasuries of Wythe county and the State of Virginia. There was certainly no such duty imposed upon him by law. He was under no obligation whatever, and was bound in no way to pay or advance the taxes. It was his voluntary act in derogation of the duty imposed upon him by law, and he is, therefore, not within the broadest and most comprehensive definition of the right of subrogation as stated by any text writer or decided case that has been brought to our attention."

[7] *Third Assignment.* On January 3, 1927, Sebrell, Wade & Company obtained a judgment against James T. Gillette in the Circuit Court of Southampton county for $1,576.20, with interest thereon from October 1, 1926, till paid, and $7.85 costs. On the day the judgment was granted execution was issued thereon and placed in the hands of the sheriff of the county to be levied.

On June 15, 1926, H. M. Drewry, treasurer, settled with the Auditor of Public Accounts for a tax account due by James T. Gillette for 1925, amounting to $1,750.13.   On January 10 and 12, 1927, he levied on 140 bags of peanuts, on the Everette farm (sometimes referred to as 139 bags), upon peanuts on other farms and upon certain chattel property; and on the 18th day of January, 1927, he levied upon other goods and chattels, all being the property of James T. Gillette, and being levied on to secure the payment of the tax account aforesaid, which is itemized as follows:

| | |
|---|---:|
| Close one bond, etc. | $    41.59 |
| Real estate | 1,656.88 |
| Chattel property | 50.46 |
| Total | $1,748.93 |
| Levy fee | 1.20 |
| | $1,750.13 |

No part of these taxes was due upon the peanuts in controversy.

The property levied on by the treasurer was also levied on by Sebrell, Wade & Company under the execution above mentioned.

This execution was a lien on Gillette's goods and chattels from the moment it went into the officer's hands to be levied, and has priority over the lien which the treasurer acquired by his levy for taxes.

[8] *Fourth Assignment.*   It appears from the evidence that James T. Gillette was indebted to T. H. Birdsong & Company in a sum in excess of $6,000.00, and on the 26th day of December, 1926, Gillette agreed to sell to T. H. Birdsong & Company and they agreed to buy the entire peanut crop of James T. Gillette, for 1925, at the price of four and one-quarter cents per pound,

except one car which he had sold to E. H. Brooks to be delivered at Angelico Water Tank. Gillette delivered all the peanuts to T. H. Birdsong & Company in December, 1926, except those sold to Brooks and three other lots of 139 (sometimes called 140), fifty and fifty bags, respectively.

H. M. Drewry, treasurer, only levied on the 139 bags, of all the peanuts which were ever received by T. H. Birdsong & Company. All parties agreed that T. H. Birdsong & Company should take these peanuts at four and one-quarter cents per pound and hold the proceeds subject to the order of the court. At the price named, the 139 bags brought $476.26.

The appellant, H. M. Drewry, treasurer, contends that the title to the 139 bags of peanuts did not pass to T. H. Birdsong & Company, because they were in the possession of Gillette and had not been weighed, set aside and delivered to them at the time his levy was made. Appellees contend that the 139 bags of peanuts had been set aside and the price ascertained; that the weighing was not essential to the passing of the title, and that the contract between Gillette and Birdsong & Company shows their intention to pass title before the peanuts were weighed or delivered.

T. H. Birdsong, Jr., of T. H Birdsong & Company, testified that he purchased the 139 bags of peanuts. James T. Gillette testified that he sold T. H. Birdsong & Company all the peanuts on the Everett farm (upon which the 139 bags were grown), and arranged to have them delivered but they were levied on before they were delivered.

James T. Gillette, referring to the 139 bags, testified further as follows:

"Q. You sold them?

"A. Yes.

"Q. They were specific and had been identified and all ready for loading?

"A. Yes; and the car had been put in.

"Q. And you considered the title had passed?

"A. Yes; I had sold the peanuts   *   *   *."

It clearly appears from the evidence that the title to these peanuts had passed to T. H. Birdsong & Company before the treasurer made his levy.

[9] If the treasurer were subrogated to the rights of the Commonwealth of Virginia, it would avail him nothing in this case, since, as appears herein, the liens of Gillette's other creditors took priority over the lien created by the levy of the treasurer for taxes.

For the foregoing reasons, the decree will be affirmed.

*Affirmed.*