# CHARLESTON

JOHNSTON v. CITY OF HUNTINGTON *et al.*

Submitted January 16, 1912.    Decided October 15, 1912.

1. MUNICIPAL CORPORATIONS—*Tax Levy—Validity of Ordinance.*

   Although the general rule is that a prior ordinance can not be amended by mere motion, but only by ordinance, yet departure from the form prescribed for corporate action, as in the passage of an ordinance or order laying an annual tax levy, will not affect the validity of such action unless the charter or governing law makes such formality vital, as by declaring the action or ordinance void unless the form prescribed be followed. Without this the requirement should be treated as directory. (p. 107).

2. SAME—*Taxation—Invalid Ordinances—Ratification.*

   The general rule is that an invalid act or ordinance passed by a minority or by a less number of a municipal council or board than is required by law, cannot be validated by mere approval of the minutes at a subsequent meeting. But actual ratification of each defective action by a valid meeting will cure the defect resulting from the passage of the act or ordinance by less than a quorum or the number required for valid action, as in the case of an ordinance or order laying an annual tax levy. (p. 107).

3. SAME—*Special Tax Levy—Validity.*

   The "*special debt levy*" laid by the Board of Commissioners of the City of Huntington for the year 1909, pursuant to section 8, chapter 9, Acts 1908 is valid, notwithstanding they laid an *additional levy* for the same year, by authority of section 73 of its charter act of 1909, the additional levy there authorized, not being in lieu of the additional levy authorized by section 5, chapter 9, Acts 1908, the general law regulating the rate and manner of laying levies for taxation in counties, magisterial and school and independent school districts and municipal corporations. (p. 110).

4. SAME—*Taxation—Property Subject.*

   Persons and property brought into the corporate limits of the City of Huntington by its amended charter passed January 26, in force March 1, 1909, are not exempt from the general

levy, or the additional and special levies laid pursuant to law, August 24, 1909, for the fiscal year beginning July 1, 1909, and ending June 30, 1910. The fact that the assessor is required to begin the assessment of persons and property on and as of January 1, of each year, does not limit the municipality in laying its annual tax levies to persons and property within its corporate limits on that day. Unless otherwise exempted such persons and property are liable for the taxes for any year, if they be within the corporate limits at the time the law provides for the laying of the levy for that year. (p. 112).

Appeal from Circuit Court, Cabell County.

Bill by Stephen C. Johnston against the City of Huntington and others. Decree for plaintiff, and defendants appeal.

Reversed and Bill Dismissed.

*Marcum & Shepherd,* for appellants.

*Wyatt & Graham* and *Thos. H. Harvey,* for appellee.

MILLER, JUDGE:

The decree appealed from perpetuated an injunction restraining defendant from collecting taxes assessed against the property of plaintiff and others similarly situated, for the year 1909, which, at the time of the new charter act of January, 1909, enlarging the boundaries of said City of Huntington, was located outside its old corporate limits and of the limits of Central City, comprehended in the new charter. The new charter act was passed January 26, and took effect March 1, 1909.

The first point made against the decree appealed from is that, by the ordinance of August 24, 1909, the Board of Commissioners, besides the general levy, laid an additional levy of fifteen cents on the hundred dollars, and that this ordinance, as to that levy at least, is null and void, because not passed as required by section 73 of the charter act, "by the unanimous vote of its members."

After authorizing said board to levy and collect an annual tax on all real and personal property, and to impose certain license taxes, as therein provided, said section 73, contains this proviso: "Provided, that no greater levy shall be laid by said board of commissioners on the taxable property of said city than is now permitted to be laid under the state law relating to municipalities, except, however, that the said board of commissioners may,

by the unanimous vote of its members, by ordinance, lay an additional levy not to exceed twenty cents on the one hundred dollars of all the taxable property within said city; but said ordinance laying said additional levy shall not become effective or operative if two-fifths of all the members elected to the citizens board shall express a veto to said ordinance in the manner prescribed in article III of this act."

The record of this board does show that the ordinance complained of was passed when but three of the four members were present. The ordinance is in the form prescribed by section 67 of the charter, "Be it ordained by the Board of Commissioners of the city of Huntington," and so far as the general levy is concerned it cannot be affected by the fact that it was passed without the unanimous vote of all the members of the board.

However, the board of commissioners at its session held September 10, 1909, anticipating no doubt that the validity of this ordinance, as to the additional levy, might be questioned, on motion, but not by any formal ordinance, ordered "that the poll tax laid on the 24th of August, 1909, be so modified and changed, as to exclude from such levy, the citizens residing outside the corporate limits of what was the old cities, of Huntington and Central City, but in all other respects the levies laid by the Board of Commissioners on the 24th of August, 1909, are hereby ratified, approved and confirmed and the City Treasurer, is instructed to prepare his tax tickets and books accordingly."

But it is contended vigorously that this action of the board, by mere motion, was ineffective to validate the prior invalid ordinance, first, on the ground that an ordinance can not be amended by mere motion, nor by a proceeding of less dignity, than is required for the original act; second, because a prior invalid enactment of a majority cannot be subsequently validated by a minute or motion adopted at full meeting.

For the first proposition, that an ordinance cannot be amended by motion, but only by ordinance, counsel cite McQuillin Municipal Ord., sections 195 and 196, pages 315, 316, and cases in note, among them, C. & N. P. Ry. Co. v. Chicago, 174 Ill. 439, 51 N. E. 596; Galt v. Chicago, Id. 605, 51 N. E. 653. We find the general doctrine so stated by McQuillin in the sections referred to. But in section 116 the same writer lays down the

general rule which this Court has recently approved, namely that: "Departure from the form prescribed for corporate action, as in the passage of an ordinance, will not affect the validity of such action unless the charter or governing law makes such formality vital, as by declaring the action or ordinance void unless the form prescribed be followed." *City of Bluefield* v. *Johnson,* 68 W. Va. 303, and cases cited. The new charter of Huntington contains no such declaration. We hold, therefore, with respect to an ordinance like the one in question—the laying of an annual tax levy—which is not of the same permanent character as ordinances of a more general governmental character, and which a municipal council may enact, formal requirements in their enactment should be construed as directory, and substantial compliance therewith plainly manifesting the intent thereof, answers all reasonable requirements of the statute.

On the second proposition, that an invalid enactment of a majority cannot be subsequently validated by a minute or a motion adopted at a full meeting, what has been said by way of argument on the first proposition is equally applicable. The second proposition affirms in substance, that the only way by which a prior invalid action of the board of commissioners could be cured, was by a new and formal ordinance, of the same dignity as the first, and that this could not be done, as was attempted in this case, by a mere motion.

In support of their contention counsel cite us to 28 Cyc. 354. This authority says: "Nor will a subsequent approval of minutes by a full meeting operate to ratify the void enactment of an ordinance by a minority." For this two California cases are cited in the note. But this is not all this authority says. Immediately following that quoted we find this: "But it seems that actual ratification of each defective action by a valid meeting will cure the defect resulting from passage by less than a quorum." There was nothing defective in the prior action of council, except the passage of the ordinance without unanimous action on the subject of the additional levy. The order of correction, already quoted, says that, "in all other respects the levies laid by the Board of Commissioners on the 24th of August, 1909, are hereby ratified, approved and confirmed." By unanimous vote at this meeting and on this motion, the prior action

in that respect was certainly ratified and confirmed, and the order says that each of the several levies were ratified and confirmed. We think this a substantial compliance with the authority cited, assuming that a literal compliance therewith is required. So we think there is no substantial merit in the second proposition.

With reference to both propositions we may inquire what is meant by the word "ordinance" in the charter act, authorizing the board of commissioners "by ordinance" to lay the additional levy complained of? The original ordinance passed by the board of commissioners observed all formality, but was such formality really required in laying an annual tax levy? In *Chandler* v. *Johnson City,* (Tenn.) 59 S. W. 142, 143, it was held that a mere resolution was a compliance with the charter of a municipality, requiring the board, of mayor and aldermen, at its first meeting, after election and qualification, to fix the salaries of officers *by ordinance.* In *Tipton* v. *Norman,* 72 Mo. 380, 383, it was held, that an order or resolution, adopted by the council and entered on its records, was in point of form, a valid exercise of the power, where the powers conferred were to be exercised *by ordinance.* We think the order or resolution of ratification and affirmance, assuming the prior ordinance to have been invalid, was a valid exercise of the powers of the council to lay the additional levy authorized by said section 73 of the charter act.

A second point made against the decree is, that the special levy laid by the same ordinance, designated in the statute relied on as, "Special debt levy," is also invalid, and for additional reasons. The ordinance on its face refers to section 8, chapter 9, Acts of 1908, as its source of authority. This is a section of the general law relating to the rate and manner of laying levies. As applicable to municipal corporations, it provides, in substance, that if any municipal corporation have outstanding unpaid orders on its treasury, or owes other floating indebtedness, incurred previous to January 1, 1908, of a considerable amount, and which it is impracticable to discharge out of the proceeds of the regular levy, and it deems it inadvisable to submit to the voters of the municipality the question of an additional levy, provided for in section 5, the council may lay a levy in addition

to the regular levy, to be called "special debt levy," not exceeding ten cents on each one hundred dollars of the taxable property of the municipality. And this section provides how this levy shall be collected and accounted for.

The ordinance of the council, so approved and confirmed, finding an outstanding indebtedness against the said City of Huntington, amounting (including interest) to the sum of Forty-nine Thousand and Forty-seven Dollars and Twelve Cents, as shown by the statement of its clerk, and not provided for by levy, which it was desired to liquidate, as provided by section 8, of chapter 9 of the Acts of the Legislature of 1908, further "ordered that ten cents be and the same is hereby levied on each One Hundred Dollars of the valuation of all property taxable in the said municipality, according to the last assessment thereof, for the purpose of applying the same towards the payment of said outstanding indebtedness, and the accrued interest thereon."

Whether this part of the ordinance is a valid exercise of power conferred depends largely on the proper construction of said section 73 of the charter act. If it was intended by the Legislature that the *additional levy* authorized by that section, and which was laid by the ordinance, was to be in lieu of the *additional levy*, provided for in section 5 of the general law, and which by that statute could only be validated by a referendum to the voters of the municipality, the board of commissioners were without authority to lay the ten cent levy, for such a levy is only authorized by said section 8, of chapter 9, of the Acts of 1908, when in the language of the statute, the levying body deems it inadvisable to submit to the voters of the municipality the question of such *additional levy*. The provision of section 73, of the charter act, calling for construction is, "provided, that no greater levy shall be laid by said board of commissioners on the taxable property of said city than is now permitted to be laid under the state law, relating to municipalities, except," etc. The ordinance in question does not recite in the language of section 8 of the general law, above quoted, that the board of commissioners deemed it inadvisable to submit to the voters the question of an additional levy, as provided in section 5. But if by proper construction the laying of the

*additional levy,* provided for in said section 73 of the charter
act, was intended as a substitute for the *additional levy* to be
ratified by the people, under section 5 of the general law, then
having exhausted its power to lay such *additional levy,* the
board of commissioners would not be authorized to lay the ad-
ditional levy of ten cents. The construction which the board of
commissioners evidently put upon the statute was that the *addi-*
*tional levy* authorized by said section 73 of the charter act was
not intended as a substitute for the additional levy of twenty
cents under section 5 of the general law; that the additional
levy, under section 73 of the charter act is a special levy provid-
ed by that act, and in no way controlled by the provisions of the
general law. While the question is a troublesome one, as many
of these tax questions are, we are inclined to the view that the
construction placed by the municipal authorities on these stat-
utes is the correct one. The board of commissioners did not
undertake to lay a levy under section 5 of the general law and
submit the question to a vote of the people. Giving literal con-
struction, therefore, to the language of section 8, they would
have the right to lay the ten cent levy arbitrarily. Our con-
clusion is that the levy is valid. We have not overlooked the lan-
guage of section 4 of the general law, containing the limitations
upon the taxing power of municipalities, nor the last provision
of that section, "that such levy shall not exceed thirty-five cents
on each one hundred dollars of said valuation for the year nine-
teen hundred and eight, and shall not exceed thirty-five cents
after that year, *anything in the charter of any municipal cor-*
*poration to the contrary notwithstanding.*" The charter act was
subsequent in date to this general law, and operates as a repeal
of any provision of the general law in conflict with it. Pro-
visions of the special act must be given proper construction
to effectuate the meaning and intent of the legislature. We can-
not say that the additional levy provided for in section 73 was
intended to be in lieu of the additonal levy under section 5
of the general law. No words of the charter say so. To give
the charter that construction, we would have to infer that inten-
tion. Literal construction of the words used really speaks the
contrary.

The third and last point made against the decree is, that the

whole levy and each part of it is illegal and void, first, upon the ground that the property of the appellees was at the beginning of the assessment year located wholly outside the corporate limits of either of the two cities, and that the county assessor, whose duty it was to assess the lands and property of the people, as of the first day of January, of each year, as provided by section 132, chapter 80, Acts of 1907, had not assessed the property of the appellee as located within the corporate limits of the City of Huntington or of the City of Central City, and that his assessment could not be made applicable for the year 1909 to the new territory brought into the corporate limits by the charter act of January 26th of that year, which did not become effective until March 1; and, second, on the ground that the municipal authorities, in laying levies for the year 1909, limited as they were to the last preceding assessment by the county assessor, had no authority, as was done, to pick out of the assessor's books the lands and property of persons outside of the old corporate limits of the two cities, and within the new corporate limits, and extend and collect the municipal levies against them.

We see little merit in either of these propositions. True the law does provide that the assessment of person and property shall be made as of the first day of January of each year; but it was competent for the legislature by the charter act, after that date, to bring within the corporate limits of the City of Huntington the outlying property of appellee and others, and authorize the levy and collection of taxes thereon for municipal purposes for the same year. The charter by its terms took effect March 1, 1909. After that time all persons and property within the corporate limits as defined by the charter, became subject to the jurisdiction of the municipal authorities. We are cited to but two decisions for the propositions relied on, *Austin v. Butler,* (Tex.) 40 S. W. 340, and *City of Latonia v. Meyer,* 86 S. W. 686. The syllabus in the first case is: "Land included within city limits after January 1st, and before the assessment of taxes for the year, is not subject to city taxes for such year, though the owner resided in the city on January 1st." The opinion in this case is short and without citation of authority. But it is inapplicable to the facts in this case. While our statute requires the assessor to assess or value property as of the

first day of January, the levy and the assessment of the taxes against such property is not made under the law until the fourth Tuesday in August. So that, while the assessment of the property made by the assessor is made as of January 1st, the assessment of the taxes by the levying authorities is not made until August, and the case cited, therefore, would not, as we interpret it, deny the right to assess the tax, if the property was subject to the tax at the time the levy was made. In the Kentucky case the syllabus is: "Property annexed to a city after the time it was the duty of the assessor to return his list of taxable property cannot for that year be taxable for the local taxes of such city." Clearly this decision is not against the validity of the levy involved in the case at bar, for by section 38, of chapter 29, Code Suppl. 1909, the assessor has until the 20th day of July to return his lists of property to the municipal authorities for taxation. After that date, as we have seen, the assessment and levy is authorized. By section 1, of chapter 65, Acts of 1909, the fiscal year for all counties, districts, school districts, and municipalities is made to commence on the 1st day of July, and end on the 30th day of June of the following year. So that, according to this statute the levy for taxes complained of necessarily covered the fiscal year beginning July 1st, 1909, and ended in the following June, and it would be wholly unjust to hold that the appellee and others similarly situated should be allowed to escape the payment of taxes for that fiscal year.

Our conclusion, therefore, is to hold the levies complained of valid, and this conclusion requires a reversal of the decree below and a dismissal of the plaintiff's bill.

*Reversed and Bill Dismissed.*