GEORGE F. HAZELWOOD COMPANY, A CORPORATION

*v.*

J. STANLEY PITSENBARGER, ASSESSOR

(No. 12360)

Submitted January 26, 1965.      Decided April 6, 1965.

*George I. Sponaugle,* Prosecuting Attorney, for plaintiff in error.

*Blundon & Hart, Joseph A. Blundon, Henry Clay Hart, Jr.,* for defendant in error.

BERRY, JUDGE:

This is an appeal from a judgment of the Circuit Court of Pendleton County, West Virginia, entered on February 4, 1964, holding that the assessment of personal property owned by the George F. Hazelwood Company, a Corporation, by the assessor of Pendleton County for the year 1962 was erroneous and unlawful, and granting relief prayed for by said corporation for a refund of taxes paid by it on said property for the first half of 1962 and exonerating said corporation from the payment of taxes for the second half of 1962. This Court granted an appeal from said judgment on July 13, 1964, and the case was submitted for decision on arguments and briefs at the January Term.

The George F. Hazelwood Company, a Corporation, the petitioner below, is a foreign corporation organized and existing under the laws of the State of Maryland, with its principal office and place of business in Cumberland, Allegany County, Maryland, and qualified to do business in the State of West Virginia. In 1960 it moved heavy equipment valued at approximately $91,000.00 into Pendleton County, West Virginia. During the year 1960, and almost the entire year of 1961, this Company was engaged in construction work at the Naval Research Project at Sugar Grove, Pendleton County, West Virginia, under a contract with the United States Navy Department. This work was completed, and some time in December, 1961, all of the heavy equipment of the Company was moved back to its principal place of business in Cumberland, Maryland. The assessor of Pendleton County assessed the personal property of this Company in Pendleton County on December 31, 1960 for 1961

taxes, as required by the laws of West Virginia at that time. The taxes for the year 1961 were paid in full by the Company. At the 1961 Regular Session of the West Virginia Legislature, Code 11-3-1, dealing with the assessment of personal property, was again amended and provided that all such property should be assessed annually as of the first day of July at its true and actual value, and that such taxes upon all such property should be paid by the owners thereof on that day. Under the provisions of the amended statute in question, the assessor of Pendleton County assessed for 1962 taxes the Hazelwood Company's personal property located on July 1, 1961 in the State of West Virginia. The Hazelwood Company advised the assessor of Pendleton County that all of its personal property had been removed from West Virginia in December, 1961, and objected to the assessment of such property for the year 1962 taxes. Likewise, the Company protested to the State Tax Commissioner who replied that the assessment date, but not the tax year, had been changed. Notwithstanding the objection of the Hazelwood Company to the assessment, such assessment was actually made on said property for 1962 taxes by the assessor on January 29, 1962, for such property as was located in the State of West Virginia on July 1, 1961. All of the Hazelwood Company's property, consisting of heavy machinery and equipment involved in the assessment by the assessor of Pendleton County, was located and kept in the State of Maryland during the entire year of 1962, and the Hazelwood Company was assessed and taxed thereon for the full year by the State of Maryland. The Hazelwood Company paid to the Sheriff of Pendleton County, West Virginia, the first half of the 1962 taxes in the amount of $684.38, such being its assessment for personal property in West Virginia, and then filed a petition in the County Court of Pendleton County, West Virginia, to obtain a refund for the first half of 1962 taxes paid by it, and for an exoneration from the payment of taxes for the second half of the year 1962.

The hearing was held before the County Court of Pendleton Connty upon the petition filed therein in connection with this matter, and on February 11, 1963, an order was

entered by said Court denying the relief prayed for in its petition.

On March 5, 1963, the George F. Hazelwood Company filed a petition in the Circuit Court of Pendleton County, West Virginia, appealing from the order entered by the County Court of Pendleton County and praying that said order be reversed. On February 4, 1964, a hearing on said petition was held by the Judge of the Circuit Court of Pendleton County and an order was entered reversing the ruling of the County Court of Pendleton County and holding that even though the personal property of the Hazelwood Company was located in Pendleton County, West Virginia, on July 1, 1961, it had no tax situs in West Virginia during the year 1962, and that it was erroneously and unlawfully assessed. This order directed the sheriff of Pendleton County to refund the first half of the 1962 taxes paid to Pendleton County and exonerated said Company from the payment of taxes on such personal property for the second half of the year 1962.

It is contended in this appeal that the judgment of the Circuit Court of Pendleton County is erroneous and not supported by the law applicable in such cases.

It is the contention of the appellee Hazelwood Company that the Legislature did not intend by the 1961 tax amendment to impose a tax for the calendar year 1962 on property already taxed for 1961 which was not within the state during the year 1962, and if it was so intended, that such tax would be unconstitutional because such property did not have a tax situs in West Virginia during any part of the year 1962, and was, in fact, located, assessed and taxed during such year at the domicile of the taxpayer. It is conceded by the appellee in this proceeding that after the Legislature amended the assessment statute in 1961 and placed it on a fiscal year basis, that is, from July 1 until June 30, the tax year still remained on a calendar year basis, in which manner property, both personal and real, had been assessed and taxed for many years, notwithstanding a statement contained in the case of *State ex rel. Johnston* v. *City of Huntington*, 71 W. Va. 106, 76 S. E. 142.

This question is discussed in 60 West Virginia Law Review, on page 271 by Professor Londo H. Brown. It is pointed out there that if taxes are not based on a calendar year after the 1961 tax amendment changing the assessment date, it would result in either an overlapping assessment or a gap of six months in 1962 during which time no taxes could be imposed. It can certainly be said that the Legislature did not intend to have either event occur by virtue of the amendment. Professor Brown's article deals with the taxation of real property under the provisions of Code, 11A-1-2, as amended by the Legislature in 1961, which provides that a lien shall attach on the assessment date, July 1, 1961 and on July 1 of each year thereafter, for the taxes "payable for the ensuing fiscal year". This language is not in Code, 11-3-1, which deals with the assessment of the property and there is no specific section relative to the year for which the taxes on personal property are payable, but the sections are in the same chapter dealing with taxation of personal and real property and should be read together. See Code, 11A-1-1, as amended, which says that "taxes" as used in Chapter 11A refers to both real and personal levies unless otherwise specified. It would not be possible under the present law in this state to have two tax years for real and personal property. It is true that there is no lien denominated as such on personal property after assessment thereof for taxation, but Code, 11A-2-3, as amended, provides that the sheriff may distrain for delinquent "taxes" any goods and chattels belonging to a person assessed, and Code 11A-2-5, as amended, provides for applying the distraint to collect taxes assessed against goods and chattels, even though they have been transferred to another person. It is difficult to see any practical difference between this and a lien.

It would appear that the intention of the amendment to the assessment statute was to give the assessors more time in which to make their assessments in order that they could be completed in time for the use of the levying authorities before the beginning of the fiscal year. The practical effect of this amendment as applied by the officials who are

charged with its administration has been to allow the levies and budgets to be made before the beginning of the fiscal year and the collection of taxes to be made two months sooner than they were made before, without any overlap or gap. The interpretation of the amended statute in question dealing with assessment and taxes by the officers whose duty it is to administer it as indicated above should be given great weight in the construction of the statute. 17 M.J., Statutes, Section 58. Therefore, the assessment made by the assessor of Pendleton County on the personal property of the Hazelwood Company located in Pendleton County on July 1, 1961, was for the tax year 1962. The tax assessed on this property December 31, 1960 and paid in full was for the year 1961. The exception contained in Code, 11-3-30, as amended, preserving the former law as to 1961, while inaptly expressed, merely means that the law pertaining to assessments and tax payment in effect on January 1, 1961, before the amendment, would be applicable to and govern the assessments already made and taxes yet to be paid for the year 1961. The exception has no bearing on the case at bar because the first assessment was made and the taxes for 1961 accrued following the provisions of the law before it was amended.

It is well settled that a Legislature of a state has the power to fix the time at which property within its jurisdiction may be assessed. 51 Am. Jur., Taxation, Section 441; 84 C.J.S., Taxation, Section 60; 38 L.R.A. (N.S.) 856 et seq. Personal property that has never been located within a state and over which the state has no power or control or which is only temporarily within the state cannot be assessed and taxed by such state, but if it has been located within the jurisdiction of the state for a period of time and used therein it may acquire a tax situs and be assessed on any day fixed by the Legislature and the tax is determined thereby, even though the property is removed from the state before the tax is due or even before the assessor actually entered his figures. 51 Am. Jur., Taxation, Section 442; *San Gabriel Valley Land & Water Co.* v. *Witmer Bros. Co.*, 96 Cal. 623, 29 P. 500, affirmed on rehearing, 31 P. 588,

18 L.R.A. 465. It has been specifically held that property may be assessed six months before the tax year. *Muskogee County* v. *United States,* 133 F. 2d 61. Tangible personal property which has acquired a tax situs retains such status until it is removed from the jurisdiction of the state in which it has acquired such tax situs, and the mere intention or determination to move such property is not sufficient to cause the state in which it was located at the time the tax situs was established and the property assessed, to lose its power to tax such property. It must be actually moved before the assessment date fixed by the Legislature. 84 C.J.S., Taxation, Section 115; *State* v. *Crown Central Petroleum Corp.,* (Tex.) 242 S. W. 2d 457.

Although the personal property of the Hazelwood Company has been taxed by both West Virginia and Maryland for the same year, there is no constitutional inhibition against such taxation. Generally, to constitute double taxation there must be an identity of taxing authority, taxing period, taxing purpose, and person and property taxed; and even then there are exceptions resulting from constitutional provisions not necessary to discuss here. 51 Am. Jur., Taxation, Section 284, 285. Many constitutions do not prohibit *per se* double taxation, and cases striking it down have generally relied on "equal and uniform" clauses.

The State of Maryland had the power to tax the property in question because it was located within its jurisdiction at the domicile of the owner on January 1, 1962, at which time such property was apparently assessed for taxation. West Virginia had the power to tax the same property because it was located in West Virginia on July 1, 1961, which was the time the Legislature had fixed to determine a tax situs in West Virginia for 1962 taxes and had provided that the tax upon such property shall be paid by the owners thereof for property located in West Virginia on July 1, 1961. Code, 11-3-1, as amended.

It has been held in a similar case that both the State of Texas, the domicile of the owner of the property, and the State of Louisiana, into which State the property was moved,

could tax the personal property, it having acquired a tax situs and having been assessed in both states for the same year. *Grisby Construction Company* v. *Freeman,* 108 La. 435, 32 So. 399. This question is discussed in 51 Am. Jur., Taxation, Section 450, wherein it is stated: "As a matter of constitutional power, a state which otherwise has the right to tax personal property is not deprived thereof by the fact that the property is subject to taxation, or that a tax has actually been paid thereon, in another state for the same period."

The statutory assessment date determines the taxability of property and not the actual date the assessment is made. *United Telephone Mutual Aid Corporation* v. *State of North Dakota,* 87 N. W. 2d 54.

It is the contention of the appellee that inasmuch as the sole basis for the power of West Virginia to tax the property in question for 1962 is because such property was in West Virginia on July 1 of the preceding year, it would follow that West Virginia could have also lawfully assessed the same property for 1963 taxes on July 2, 1961, and for 1964 taxes on July 3, 1961, and continued so to do for any number of years in the future, regardless of whether the property was in West Virginia the years for which such taxes were assessed. This could not be done because of the wording of the statute pertaining to the assessment of such property. The statute, Code, 11-3-1, as amended, provides that all property shall be assessed annually on the first day of July and the law requires the property to be in the state at the time it is assessed. All property must be assessed annually because the value changes and any attempt to assess property for taxation in future years when the property was not located in the taxing state could not be upheld for many reasons.

It should be pointed out that the property in question was brought into West Virginia in 1960 and was not in West Virginia on December 31, 1959 when assessment was made on such property and therefore the Hazelwood Company was not assessed or taxed for its personal property in West

Virginia during the year 1960. Therefore, it can be seen that the application of the assessment and tax laws in this state, before and after the 1961 amendment tended to equalize and compensate in relation to the taxes in question and was not an unjust burden as asserted by the appellee.

For the reasons stated herein, the judgment of the Circuit Court of Pendleton County is reversed.

*Reversed.*