**INTERSTATE PROPERTIES,
INC., Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

No. Civ.A. 2:99–0629.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 17, 2000.

James D. Kauffelt, Kauffelt & Kauffelt, Charleston, WV, for plaintiff.

David Allen Barnette, Stephen D. Crislip, and Steven M. Condaras Jackson & Kelly, Charleston, WV, for defendant.

**MEMORANDUM OPINION
AND ORDER**

HADEN, Chief Judge.

Pending are the parties' cross motions for summary judgment. Briefing is complete and the motions are ripe for disposition. As explained below, the Court **DENIES** both parties' motions, but **GRANTS** declaratory judgment, finding the lease in question, as applied by the Court, to be clear, unambiguous, and consistent.

## I. FACTUAL BACKGROUND

Plaintiff Interstate Properties, Inc. (Interstate) is a Georgia corporation, owner of a parcel of real estate in Elkview, West Virginia, on which it operates a shopping center known as The Crossings Shopping Center (The Crossings). Defendant K–Mart Corporation (K–Mart), a Michigan corporation, leases a retail store at The Crossings from Interstate. The parties find themselves in disagreement about several terms and conditions in their lease.[1] The parties have stipulated to pertinent facts and submit the action to the Court as appropriate for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

To prevail on a motion for summary judgment, the movant must demonstrate there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact has been raised, a court construes all inferences in favor of the non-movant. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," a court must affirm the grant of summary judgment in that party's favor. *Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir. 1995) (citations omitted).

"At bottom, the district court must determine whether the party opposing the

---

**1.** The 25–year lease between Covington Place Associates and K–Mart Corporation, signed January 31, 1989 was assigned to Interstate on December 13, 1993.

motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir.1995). Through this analytical prism, the Court evaluates the parties' motions.

### B. The interstate/K–Mart Lease

K–Mart prepared the parties' lease, which contains the standard terms and conditions K-mart utilizes throughout the United States. (Stipulations of Fact ¶ 6.) Under the lease, K–Mart pays an annual minimum rental of three hundred seventy-one thousand eight hundred sixty dollars ($371,860.00) in equal monthly installments, paid in advance on the first day of each month. (Stipulations of Fact, Ex. A at Art. 3.)[2] When the store's gross sales with respect to any *lease year* exceed sixteen million dollars ($16,000,000.00), K–Mart must pay "additional rental" of one percent (1%) of excess gross sales. (Art. 4 ¶ 1.) "Lease year" is a defined term: "each successive period of twelve consecutive calendar months from the last day of the month in which said lease term shall commence." (Art. 4 ¶ 2.) The parties stipulate the lease year, as defined, runs from December 1 to November 30 and the lease term commenced on December 1, 1989. (Stipulations of Fact ¶ 8.)

Concerning taxes, the lease provides K–Mart "shall pay all ad valorem real estate taxes ... levied against the taxable premises during the term of the lease." (Art. 5 ¶ 1.) The "taxable premises" include certain land and buildings, K–Mart's portion of The Crossings.[3] The "date of levy" of all *ad valorem* real estate taxes "shall be deemed to be the date specified by each applicable taxing jurisdiction for which such taxes become a lien on the taxable premises." (Art. 5 ¶ 5.) In West Virginia a lien on real property for the taxes assessed thereon attaches on July first "for the taxes payable for the ensuing fiscal year."[4] W.Va.Code § 11A–1–2 (1999). K–Mart's "liability and obligation hereunder to pay such ad valorem real estate taxes shall be fully accrued, fixed and final on the date of levy thereof." (Art. 5 ¶ 5.)

The parties' dispute centers on the following provision:

The amount, if any, by which the ad valorem real estate taxes and assessments payable hereunder exceed *that amount assessed, imposed and paid for the third full lease year during any subsequent lease year, shall be hereinafter referred to as an "excess tax payment".* All excess tax payments shall be deductible by Tenant from additional rentals, as defined in Article 4.

(Art. 5 ¶ 9 (emphasis added).) The parties agree the "third full lease year" is December 1, 1991 to November 30, 1992. (Stipulations of Fact ¶ 8.) K–Mart argues that the disputed provision sets a base tax year of 1992, the amount which became a lien on July 1, 1991. Interstate claims the

---

**2.** Hereafter, lease terms are identified solely by article number, with a paragraph number where necessary.

**3.** Although the lease provides for attempts to obtain a separate tax assessment for K–Mart property alone, such separate assessment was never obtained; however, the parties do not dispute K–Mart's portion of The Crossings' tax assessments as billed to them by Interstate.

**4.** This statutory provision has caused some confusion about the relation of tax years, assessment years, and calendar years. *See* London H. Brown, *Changes in West Virginia Real Property Tax Law,* 66 W.Va.L.Rev. 271 (1964). The West Virginia Supreme Court of Appeals acknowledged that, although the assessment year was changed to the fiscal year, "the tax year still remained on a calendar year basis, in which manner property, both personal and real, had been assessed and taxed for many years[.]" *George F. Hazelwood Co. v. Pitsenbarger,* 149 W.Va. 485, 488, 141 S.E.2d 314 (1965), *appeal dismissed,* 382 U.S. 201, 86 S.Ct. 392, 15 L.Ed.2d 268 (1965). Here, the parties agree July 1 of the year preceding the tax year is the levy date for purposes of the lease.

provision requires the base year to be 1993, as set by the amount which became a lien on July 1, 1992, during the third full lease year.[5]

### C. Contract Interpretation

 Under both the *Erie* doctrine[6] and the lease's choice of law provision, (Art. 38), the Court applies West Virginia law. It is well-settled that the Court resolves questions respecting the construction and interpretation of a contract. *See, e.g., Murray v. Kaiser Aluminum & Chemical Corp.,* 591 F.Supp. 1550, 1553 (S.D.W.Va. 1984) (Haden, C.J.) (citing *Lee Enterprises v. Twentieth Century–Fox,* 172 W.Va. 63, 303 S.E.2d 702 (1983)). The threshold question is whether the contract is ambiguous. If the provisions of the contract are clear and unambiguous, the Court applies them without resort to the rules of construction. *See Columbia Gas Transmission Corp. v. E.I. du Pont de Nemours & Co.,* 159 W.Va. 1, 217 S.E.2d 919 (1975) (citing *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962)).

Both parties here assert their lease is clear and unambiguous, yet they differ diametrically about the clear meaning. Contracts are not ambiguous because the parties disagree as to the meaning of the language of the agreement. *See Orteza v. Monongalia County Gen. Hosp.,* 173 W.Va. 461, 318 S.E.2d 40 (1984). Instead, ambiguity in a contract consists of susceptibility of two or more meanings and uncertainty as to which is intended. *See*

*Jessee v. Aycoth,* 202 W.Va. 215, 503 S.E.2d 528 (1998).

### D. The Parties' Lease is Clear and Unambiguous

The parties have created their own difficulties in interpreting this lease by attempting, like Cinderella's step-sisters, to force their expansive interpretations into the glass-slipper language of the lease. Each party insists that the lease must refer to some tax year, K–Mart says 1992 and Interstate says 1993. The lease, however, clearly and unambiguously sets the base year for calculation of the excess tax payment as the third full lease year. (Art. 5 ¶ 9.) "Lease year" is a defined term, and the parties agree that the "third full lease year" can be determined to be the year from December 1, 1991 to November 30, 1992.

The Court finds and concludes the amount "assessed, imposed and paid for the *third full lease year*" therefore may be calculated easily:

(1) Determine one-twelfth (1/12th) of the amount assessed, imposed and paid for tax year 1991. (Taxes for December 1991.)

(2) Determine eleven-twelfths (11/12ths) of the amount assessed, imposed, and paid for tax year 1992. (Taxes for January through November, 1992.)

(3) Add results of (1) and (2). (Amount assessed, imposed, and paid[7] for third full lease year.)[8]

---

5. The dispute arose recently because this provision did not become operative until November 30, 1996, the first year K–Mart's Crossings' store gross sales exceeded $16 million. Only for the year ending November 30, 1997 did the parties disagree as to application of the tax credit payment. (Pl.'s Mem. in Response at 8.)

6. In an action brought under the Court's diversity jurisdiction, West Virginia substantive law controls. *See Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

7. The parties extensively briefed the issue of whether these three terms always determined

the same amount, i.e., could one amount be assessed and a different amount be paid. However, because the phrase is retrospective to the third full lease year, it presents no problem. Neither lessor nor lessee challenged the tax assessment for that lease year. Thus, the amount paid was the amount assessed and imposed.

8. K–Mart paid $36,401.20 for tax year 1991 and $42,462.66 for tax year 1992. (Stipulation of Facts ¶ 10.) Applying the Court's method, ¹⁄₁₂ of 1991 taxes equals $3033.44. 11/12ths of 1992 taxes equals $38,942.11. By the Court's calculation, the amount assessed, imposed, and paid for the third full lease year equals $41,975.55.

■ The "amount, if any, by which the ad valorem real estate taxes and assessments payable hereunder[9] exceed the amount assessed imposed, and paid for the third full lease year during any *subsequent lease year*" constitute the "excess tax payment." (Art. 5 ¶ 9 (emphasis added).) Excess tax payment is, thus, also based on the lease year and must be calculated for each subsequent *lease year* by the same 1/12th and 11/12ths method, given at (1) to (3) above. This excess tax payment is deductible from additional rentals.[10] (Art. 5 ¶ 9.)

The additional rental[11] is also based on the lease year and, thus, it is easily related to excess tax payments. "[W]ith respect to any *lease year* ... in which Tenant's 'gross sales' ... shall exceed the sum" of sixteen million dollars ($16 million), Tenant [K–Mart] must pay additional rental of one percent of gross sales.[12] (Art. 4 ¶ 1.) The additional rental is to be paid on or before the thirtieth (30th) day following the end of each lease year. (*Id.*) Therefore, under the terms of the lease, both 1) the excess tax payment and 2) the additional rental are calculated for each *lease year*.

The Court finds and concludes that the lease between Interstate and K–Mart is clear and unambiguous. The basis of all calculations is the *lease year*, which is a defined term to which the parties stipulate. Determination of the excess tax payment requires calculation of the tax payments for the third full lease year, December 1, 1991 to November 30, 1992. Based on the parties' stipulations to the amounts paid for tax years 1991 and 1992, the Court calculates the base tax amount for the third full lease year is forty-one thousand nine hundred seventy-five dollars and fifty-five cents ($41,975.55). Tax payments for each succeeding *lease year* are similarly calculated. Any excess over $41,975.55 is the excess tax payment. Excess tax payments are deductible from additional rentals, which are also based on *lease years* in which gross sales exceed sixteen million dollars ($16 million). The excess tax payment for each lease year is deductible from the additional rental for each lease year. The lease is clear, unambiguous, and consistent throughout in basing all calculations on the *lease year*.

The Court recognizes basing the excess tax payment on the third full lease year, as explained and calculated above, results in an adjustment in favor of K–Mart for amounts already tendered for the years in dispute. Because the arithmetic is simple and the parties have the necessary figures at their disposal, the Court leaves further calculations to the parties.

## III. CONCLUSION

The Court **DENIES** both parties' motions for summary judgment. Instead, *ex mero motu*, the Court **GRANTS** declaratory judgment, finding the lease between the parties to be clear and unambiguous as applied in this Memorandum Opinion and Order. The parties are **ORDERED** to calculate the excess tax amounts and additional rentals by *lease years*, as required by their contract and adjust their accounts accordingly. The Court retains jurisdic-

---

9. For years after the third full lease year, the parties must determine simply the amount "ad valorem real estate taxes and assessments *payable* hereunder." The ostensible problems with the "assessed, imposed, and paid" language, thus, do not arise for years after the third.

10. Additionally, if the excess tax payment for any lease year exceeds the additional rent due for that year, the excess may be carried over and deductible from additional rentals for succeeding lease years on a cumulative basis. (Art. 5 ¶ 9.)

11. K–Mart pays the minimum rental of three hundred seventy-one thousand eight hundred sixty dollars ($371,860.00) for each year in equal monthly installments. (Art. 3.) Therefore, there is no difference between the 12–month annual rental for a calendar year or a lease year.

12. "Gross sales" is extensively defined, (Art. 4 ¶¶ 5(a)–(f)), and the parties do not disagree about its definition or calculation.

tion for the limited purpose of approving the parties' final accountings with regard to these matters, which shall be reported to the Court by **Thursday, April 13, 2000.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.