# Richmond

WILLIS E. CHAMBERS, W. ROY NICELY, AND G. M. ROBINSON, TRUSTEES OF THE CLIFTON FORGE NATIONAL BANK IN LIQUIDATION V. L. F. HIGGINS, TREASURER OF THE CITY OF CLIFTON FORGE, AND J. W. C. JOHNSON, TRUSTEE.

November 11, 1937.

Present, All the Justices.

The opinion states the case.

*J. C. Goodwin* and *J. M. Perry*, for the appellants.

*J. W. C. Johnson*, for the appellees.

HOLT, J., delivered the opinion of the court.

On May 18, 1931, R. W. Sampson and wife conveyed to J. W. C. Johnson, trustee, improved real estate at Clifton Forge, together with eight pool tables in a building there. This conveyance was in trust to secure a note for $2,900, payable to the order of The Clifton Forge National Bank at Clifton Forge. It was a second lien on that real estate and a first lien on the pool tables.

In due course this debt held by the bank passed to the appellants here, Willis E. Chambers, W. Roy Nicely, and G. M. Robinson, trustees of The Clifton Forge National Bank in liquidation. It was in default and the trustee, at the request of the holders, proceeded to make sale of these pool tables. Before this request was made and before sale, L. S. Higgins, treasurer of the city of Clifton Forge, had levied on them in an effort to collect taxes, etc., indebtedness due to that city and to the Commonwealth. An agreement was then entered into between the treasurer and the holders of the trust deed debt by which he was to go ahead with the sale and to hold its proceeds subject to the order of court. Sale was made on August 31, 1936. Tables sold for $850 and certain personal property not covered by the trust deed sold for $195. The petitioners here are concerned only with the fund covered by their lien, in amount $787.

The trustee in his bill asked the court for directions as to its distribution—that the priorities of claimants' rights

be determined. This has been done. The bank gets nothing, and its trustees have appealed.

This statement shows the character and amount of the claims of the city and of the State, held to be preferred:

| | |
|---|---:|
| 1934 personal property taxes ..................$ 47.62 | |
| 1935 personal property taxes .................. 38.46 | |
| 1936 personal property taxes .................. 28.50 | |
| 1931 personal property taxes .................. 58.42 | |
| 1932 personal property taxes .................. 55.42 | |
| 1933 personal property taxes .................. 49.15 | |
| | $ 277.57 |

City license taxes:

| | |
|---|---:|
| For city license 1934 ........................$ 227.00 | |
| For city license 1935 ........................ 213.00 | |
| For city license—1936 to Dec. 31, 1936.......... 213.00 | |
| | 653.00 |

State license taxes:

| | |
|---|---:|
| For State license—balance 1934 ..............$ 145.12 | |
| For State license 1935 ....................... 209.24 | |
| For State license 1936 ....................... 204.14 | |
| | 648.50 |

Total.....................................$1,579.07

It was contended that a license is not a tax within the meaning of the Tax Code of Virginia (section 1 et seq. [Code 1936, Appendix, p. 2399 et seq.]).

■ Such a charge may be assessed as a police regulation, and it may be assessed as a license tax.

■ "Although a license fee is often denominated a tax, a distinction is drawn in the authorities between such a fee and that which is commonly referred to as a property tax. Where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax." 17 R. C. L. p. 478.

■ The Tax Code itself, section 136, as amended by Acts 1932, ch. 158 (Code 1936, Appendix, p. 2438), designates

this tax as a license tax and declares that the "collection thereof (shall be) enforced in the manner provided by law for the collection of other taxes." Since the statute in terms treats it as a tax, this contention is without merit.

■■ This then was the situation on August 4, 1936: There was due $1,579.07. Of this sum $277.57 arose out of a direct tax on the tables themselves, and there was due to the city and to the State $1,301.50 for licenses. To collect these claims a levy was made on them. That this levy created a lien cannot be questioned. *Drewry* v. *Baugh & Sons*, 150 Va. 394, 143 S. E. 713. We are concerned only with its priority. Section 381 of the Tax Code (Code 1936, Appendix, p. 2518), reads:

"*Mortgages, et cetera, no bar to distress.*—No deed of trust or mortgage upon goods or chattels shall prevent the same from being distrained and sold for taxes or levies against the grantor in such deed while such goods and chattels remain in the grantor's possession; nor shall any such deed prevent the goods and chattels conveyed from being distrained and sold for taxes or levies assessed thereon, no matter in whose possession they may be found."

Tax Code, sec. 378, as amended by Acts 1934, ch. 240 (Code 1936, Appendix, p. 2517), tells us what may be distrained for taxes:

"Any goods or chattels in the city or county belonging to the person or estate assessed with taxes or levies may be distrained therefor by the treasurer, sheriff, sergeant, constable, or collector. In all cases property subject to levy or distress for taxes shall be liable to levy or distress in the hands of any person for taxes thereon."

■ Any goods or chattels in the possession of a taxpayer may be levied upon for all taxes due by him. It is not necessary that resort be had to each individual item taxed. If taxes were due on two horses, plainly the tax collector would not have to sell both of them. And to this right no mortgage or deed of trust is a bar, subject only to a single qualification: When they have passed out of the possession of the delinquent owner, they are liable only for

such specific taxes as have been directly levied against them. *Drewry* v. *Baugh & Sons, supra.* Reverting to the illustration used, if the owner sells one of his two horses to B and possession has passed, that horse cannot be levied upon for taxes due on account of the horse retained. That is to say, any chattel in the possession of a taxpayer may be levied upon for all taxes due by him. This notwithstanding the fact that it is covered by a mortgage. Plainly such a lien could not prevent a levy; nor was said section 381 necessary to confer that power. If this levy was not intended to take precedence over the mortgage, then it is meaningless, and certainly unnecessary.

In the construction of a statute, legislative intent is always of major moment.

"The title of an act is often, but not always, a sure guide to the true meaning and intent of the legislature, especially in this State, where the Constitution in terms requires that the object of the law shall be expressed in its title." *Peters* v. *Auditor*, 33 Gratt. (74 Va.) 368.

This is also true of the headline of a section. It tells us what the legislature had in mind. "It is true the headline is not strictly a title, but it occupies a closely related position. It contains catch words which are intended to indicate the contents of the section. Code, section 5, clause 20." *Jordan* v. *South Boston*, 138 Va. 838, 122 S. E. 265, 267. The headline of said section 381 reads: "Mortgages, et cetera, no bar to distress."

If a mortgage covers the full value of property and is a paramount lien, it is a most effective bar. Any levy junior to it would be futile.

A tax levied against a specific chattel is a paramount lien thereon, *Drewry* v. *Baugh & Sons, supra,* 150 Va. 394, at page 401, 143 S. E. 713, and follows that chattel wherever it may be. Section 381 makes no distinction, so far as mortgages are concerned, between it and a lien established by a levy for all taxes due, save where possession has changed.

We find nothing in *Drewry* v. *Baugh & Sons, supra,* counter to the conclusions here reached. That cause was properly decided. Gillette was a large property owner in Southampton county. In 1925 he was unable to pay his taxes, and this appeared in a settlement which the county treasurer made with the auditor of public accounts on June 15, 1926. Later, and on January 10, 1927, the treasurer in an attempt to collect them levied on certain personal property belonging to Gillette and in his possession. Previous thereto, and on January 3, 1927, one of Gillette's creditors obtained a judgment against him, on which judgment and as of its date an execution issued and went into the hands of the sheriff. It was said that the treasurer was not subrogated to the rights of the State, but that had he been, the results would have been the same. The State has no lien for taxes but such as is given to it by statute, and since it had no lien on Gillette's personal property for general taxes due until the levy of January 10th, that lien was junior to the lien of an execution acquired on January 3rd.

It is true that in the collection of taxes the provisions of the statute must be followed. *Marye* v. *Diggs,* 98 Va. 749, 37 S. E. 315, 51 L. R. A. 902. It is also true that the State must be able to put its finger upon the statute. *Commonwealth* v. *P. Lorillard Co., Inc.,* 129 Va. 74, 105 S. E. 683.

The State could put its finger on no statute which subordinated the lien of an execution creditor to the lien of a tax levy thereafter acquired. That is not true with respect to mortgages. It has in terms been given the right to levy on chattels covered by them. Chattels may be sold for taxes, and mortgages are no bar to distress, subject to but one qualification: Chattels out of possession may be taken only for taxes assessed thereon. It this be not true, the statute means nothing, for a right to a levy for whatever it was worth existed independent of a statute, but in this case, as a substantial right, it would have been barred by a prior mortgage.

 Petitioners do not question the priority given to the treasurer's levy so far as concerns taxes upon these pool tables for the years 1935 and 1936, but do contend that this treasurer had no power to distrain for the years 1931-1934, inclusive, that his right had expired by limitation.

No such contention was made by the then counsel for the appellants in the trial court, as is made plain by his note of argument copied into the record and by the written opinion of Judge Haden, who tells us what the issues were. *Settle* v. *Browning*, 145 Va. 307, 133 S. E. 769; *Jones* v. *United States Fidelity Co.*, 165 Va. 349, 182 S. E. 560.

Moreover, if the power of the treasurer had ceased for those years, he could make no lawful levy, but that levy is not questioned, as appears from an agreed statement of facts copied into the record and which in part reads:

"It is agreed that L. F. Higgins, Treasurer of the City of Clifton Forge, Va., had made a legal levy on the personal property conveyed under the said deed of trust and on the other personal property located in said premises at No. 428 Ridgeway Street, Clifton Forge, Va., for personal property taxes thereon due the City of Clifton Forge, Va., license taxes due the City of Clifton Forge, Va., for the privilege of operating said business, and license taxes due the Commonwealth of Virginia for the same privilege prior to the time that the said Trustee, J. W. C. Johnson, was requested to make sale under the said deed and prior to the time that he did make sale thereunder; all of which said personal property taxes and license taxes were unpaid and properly assessed and levied against the owner and operator of the said business, R. W. Sampson, who was trading as Pool & Co. That the statements hereto attached are correct as to the amount due for personal property on said personal property and as to license taxes due the City of Clifton Forge, Va., and Commonwealth of Virginia for the privilege of operating said business."

For reasons stated, the decree appealed from should be affirmed, and it is so ordered.

*Affirmed.*