In re TULTEX CORPORATION,
a Virginia Corporation, et
al., Debtors.

City of Martinsville, Plaintiff,

v.

Tultex Corporation, et al., Defendant.

No. 99–03626.

United States Bankruptcy Court,
W.D. Virginia,
Danville Division.

June 20, 2000.

---

### MEMORANDUM OPINION

WILLIAM E. ANDERSON,
Bankruptcy Judge.

This matter came upon the Motion by the City of Martinsville, Virginia ("the City") for Relief from the Automatic Stay and upon the Motion to Prohibit the Sale of Property. Oral argument was heard on May 3, 2000. The parties submitted several briefs to the Court in support of their respective positions.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(G), 157(b)(2)(N).

### Facts

Tultex Corporation ("Tultex") is a Virginia corporation whose principal place of business is in Martinsville, Virginia. Tultex manufactures various sports apparel which is sold to the public through various retail establishments. Tultex owns numerous pieces of equipment, such as cutting knives, rotary shears, and commercial sew-ing and knitting machines used in connection with the manufacturing process. This equipment is located at Tultex's operating plant in Martinsville. The equipment is subject to personal property taxes assessed by the City of Martinsville ("the City"). On January 1, 1999, the City assessed Tultex's personal property for the 1999 tax year. On or about April 30, 1999, Tultex filed its personal property tax return with the City. The total value for Tultex's personal property assessed by the City was $31,854,593.00.

U.S. Bank National Association serves as Indenture Trustee on behalf of itself and various Bondholders. The Indenture Trustee is the largest creditor of Tultex. On May 1, 1999, Tultex granted the Indenture Trustee a security interest in Tultex's personal property.

On or about November 17, 1999, the City mailed Tultex a personal property tax bill for $590,545,49. The taxes were due on December 20, 1999. Payment of personal property taxes to the City after December 20, 1999 includes a 10% non-payment penalty. In addition, interest accrues at the rate of 10% per annum. Tultex did not pay these taxes. No action was taken by the City to collect these taxes.

On December 3, 1999, Tultex, and its subsidiaries, filed a petition under Chapter 11 of the bankruptcy code. The cases were procedurally consolidated.

On March 8, 2000, the City filed its Motion for Relief from Stay. The City also contemporaneously filed a Motion to Prohibit the Sale of Tultex's personal property.

### Issues

The City asserts that it is entitled to relief from the automatic stay because it has a fixed, statutory, super-priority lien on Tultex's personal property. The City claims that it acquired this lien on the January 1, 1999 assessment date. The City argues that it was not required to

distrain the personal property to acquire the lien. Alternatively, the City argues that if it is required to distrain the property to perfect its lien, the act of distraint is not prevented by the automatic stay. Finally, the City argues that relief from the automatic stay is warranted regardless of whether the City has a lien on Tultex's personal property.

The Indenture Trustee argues that the City does not have a lien on Tultex's personal property. The Indenture Trustee's asserts that a lien is created upon personal property only when the sheriff, or other authorized collector, distrains the property. Furthermore, the Indenture Trustee argues that the City may not distrain now because such action is prevented by the automatic stay.

### *Discussion*

The determination of whether the City has a lien is the paramount issue for this Court. If the City has a first priority lien, then the City's motions are unnecessary because the City will receive the proceeds from the sale of the property. Thus, the Court will first examine whether the City has a lien on Tultex's personal property. The Court will then determine whether relief from the automatic stay is warranted.

■ Generally, the validity, priority and extent of a lien is determined within the context of an adversary proceeding. FED.R.BANKR.P. 7001. However, the validity of a lien may be determined within a relief from stay motion. *Madison National Bank v. Chiapelli*, 131 B.R. 354 (E.D.Mich.1991).

■ The determination of whether the City has a lien on the property is a matter of state law. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80, 84 (3rd Cir.1989). Since Tutlex's personal property is located within the Commonwealth of Virginia, the Court will look to Virginia law.

■ Article X, Section 1 of the Constitution of Virginia states that "[a]ll taxes should be levied and collected under the general laws." Virginia's General Assembly has passed several statutes governing how localities assess and collect taxes. The General Assembly has designated January 1 as "tax day". On that date, each locality assesses the taxpayers' tangible personal property. The tax bill each individual or corporate taxpayer will receive later in the year will be based upon the value of their personal property on January 1st.

> Except as provided under § 58.1–3010, and except as provided by ordinance or special act in localities authorized to tax certain property on a proportional monthly or quarterly basis, tangible personal property, machinery and tools and merchants' capital shall be returned for taxation as of January 1 of each year, which date shall be known as the effective date of assessment or the tax day. The status of all persons, firms, corporations, and other taxpayers liable for taxation on any of such property shall be fixed as of the date aforesaid in each year and the value of all such property shall be taken as of such date.

VA.CODE.ANN. § 58.1–3315.

While assessment occurs on January 1, the amount each taxpayer owes is not determined until months later, when the tax rate is set. The taxing authority then determines the amount owed and a bill is mailed to the taxpayer. Thus, the taxpayer is not required to pay his personal property taxes until several months after assessment takes place.

The General Assembly has also provided a mechanism for a taxing authority to collect delinquent taxes. That mechanism is called distraint. Typically, the sheriff or treasurer distrains the property by confiscating the collateral subject to taxation and selling it. The proceeds are then used to satisfy the tax debt.

> Any goods or chattels, money and bank notes in the county, city or town belong-

ing to the person or estate assessed with taxes, levies or other charges collected by the treasurer may be distrained therefor by the treasurer, sheriff, constable or collector. Property subject to levy or distress for taxes shall be liable to levy or distress in the hands of any person for taxes, penalties and interest thereon, except that any highway vehicle as defined in § 58.1–2101 purchased by a bona fide purchaser for value shall not be liable to levy or distress for such taxes unless the purchaser knew at the time of purchase that the taxes had been specifically assessed against such vehicle. Property on which taxes were specifically assessed, whether assessed per item or in bulk shall be subject to distress after it passes into the hands of a bona fide purchaser for value.

Va.Code.Ann. § 58.1–3941.

A security interest in the property will not bar distraint. Section 58.1–3942 describes the procedure used by the sheriff, or other authorized collector, when distraining property subject to a security interest. The statute provides that a security interest properly perfected prior to distraint has priority over a delinquent tax debt. However, if the distrained collateral has been specifically assessed, then that security interest will not have priority over the tax debt.

   A. No security interests in goods or chattels shall prevent the same from being distrained and sold for taxes or levies assessed thereon, no matter in whose possession they may be found.

   B. Prior to such sale for distress, the treasurer, sheriff, constable or collector, or other party conducting the sale shall give notice to any secured party ...

   C. A security interest perfected prior to any distraint for taxes shall have priority over all taxes, except those specifically assessed either per item or in bulk against the goods and chattels distrained. *Taxes specifically assessed either per item or in bulk against the goods and chattels distrained shall*

*have priority over all security interests* ... For purposes of this section, taxes specifically assessed in bulk means an assessment against the specific class of property distrained.

   D. The title conveyed to the purchaser of goods and chattels at a sale for taxes specifically assessed either per item or in bulk against such goods and chattels distrained shall be free of all claims of any creditor, including the claims of any secured party of record, provided that notice was given to such creditor as required by subsection B. The person conducting the sale shall apply the proceeds of the sale first to unpaid taxes and then the claims of secured parties of record, in the order of their priority, before delivering any sum remaining to the person or estate assessed with taxes.

Va.Code.Ann. § 58.1–3942 (Emphasis added).

The statute refers to two classes of personal property. The first is general personal property. The second consists of specifically assessed personal property. Tultex's personal property falls into the second class.

   Notably absent from all three statutes is the word "lien". From the language alone, the statutes do not give the taxing authority a lien on the personal property of the taxpayer. The General Assembly has however, specifically granted a lien to the taxing authority for real property taxes. Section 58.1–3930 states:

There shall be a lien on real estate for the payment of taxes and levies assessed thereon prior to any other lien or encumbrance. The lien shall continue to be such prior lien until actual payment shall have been made to the proper officer of the taxing authority ...

Va.Code Ann. § 58.1–3340.

   This distinction is important because Virginia has historically treated personal property and real property differently. The distinction is also important because

Virginia imposes a strict construction of its statutory scheme on taxation. " '[S]tatutes imposing taxes are to be construed most strongly against the government, and in favor of the citizen, and are not to be extended by implication beyond the clear import of the language used. Whenever there is just doubt, that doubt should absolve the taxpayer from his burden.' " *City of Winchester v. American Woodmark Corp.*, 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995) citing *Commonwealth Natural Resources, Inc. v. Commonwealth*, 219 Va. 529, 537–538, 248 S.E.2d 791, 796 (1978).

Section 58.1–3340 gives the taxing authority a lien upon real property upon assessment. The taxing authority is not required to take any additional action. However, § 58.1–3941 implies that the taxing authority is required to distrain the personal property subject to taxation in order to obtain a lien. This requirement is further supported by § 59.1–3942(C) in that personal property taxes specifically assessed receive priority over security interests when they are distrained, "Taxes specifically assessed either per item or in bulk against **goods and chattels distrained** shall have priority over security interest ..." Va.Ann.Code § 58.1–3942 (Emphasis added).

The City asserts the Virginia statutes do create a lien on personal property upon assessment and this is supported by decisions from the bankruptcy courts of Maryland, Texas and Michigan as well as the Third and Fourth Circuits. The City cites *In re Mort Hall Acquisition, Inc.*, 181 B.R. 860 (Bankr.S.D.Tex.1994), *In re T & T Roofing and Sheet Metal, Inc.*, 156 B.R. 780 (Bankr.N.D.Tex.1993), *In re Cambron Corporation*, 27 B.R. 723, 726 (Bankr. E.D.Mich.1983), *In re Wang Zi Cashmere Products, Inc.*, 202 B.R. 228 (Bankr.D.Md. 1996) in support of its position.

In Texas, like Virginia, the assessment date for personal property is January 1st. Texas bankruptcy cases hold that taxing authorities obtain liens for ad valorem taxes on the assessment date. The Court, however, finds these cases unpersuasive because the Texas statutes governing taxation clearly state that a tax lien attaches to personal property on January 1st.

> (a) On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

> (b) A tax lien on inventory, furniture, equipment, or other personal property is a lien in solido and attaches to all inventory, furniture, equipment, and other personal property that the property owner owns on January 1 of the year the lien attaches or that the property owner subsequently acquires.

Tex.Tax Code Ann. § 32.01.

Likewise, the Court does not find the Michigan or Maryland bankruptcy court cases persuasive. Michigan's tax statutes give the taxing authority a lien on personal property on December 1st.

> Sec. 40. Notwithstanding any provisions in the charter of any city or village to the contrary, all taxes become a debt due to the township, city, village, or county from the owner or person otherwise assessed on the tax day provided in sections 2 and 13. The amounts assessed for state, county, village or township taxes on any interest in real property shall become a lien on the real property on December 1, on a day provided for by the charter of a city or village, or on a day provided for in section 40a. The lien for those amounts, and for all interest and charges on those amounts, shall continue until paid ... All the personal taxes levied or assessed for the state, county, village, or township are also a first lien, prior, superior, and paramount, on all personal property of the persons assessed on December 1, on a day provided for by the charter of a

city or village, or on the day provided for in section 40a. The lien for those amounts, and for all interest and charges on those amounts, shall continue until paid. The tax liens take precedence over all other claims, encumbrances, and liens on that personal property, whether created by chattel mortgage, title retaining contract, execution, any final process of a court, attachment, replevin, judgment, or otherwise.... The personal property taxes levied or assessed by any city or village are a first lien, prior, superior, and paramount to any other claims, liens, or encumbrances of any kind upon the personal property assessed as provided in this act, any provisions in the charter of cities or villages to the contrary notwithstanding.

MICH.COMP.LAWS ANN. § 211.40.

Maryland law states that the value of personal property is fixed on January 1st when it is assessed. However, Maryland law does not grant a lien on personal property on January 1st. Maryland law does grant a lien on real property. See *Maryland National Bank v. Mayor and City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983).

The City also relies upon *In re Members Warehouse, Inc.*, 991 F.2d 116 (4th Cir. 1993). In this case, the Fourth Circuit interpreted North Carolina law. The personal property had actually been levied upon. The Court held that the "obligation to pay ad valorem property taxes ... attaches at the time the property is listed, even though the amount of the tax has not yet been determined." *In re Members Warehouse, Inc.*, 991 F.2d at 119–20. In North Carolina, the tax statutes provide that a lien attaches to real property on the date of listing (the assessment date). For personal property, the taxing authority must *first* levy on the property to get a lien. The lien can then be retroactively attached to the taxpayer's real property for the previous assessment date.

(a) Lien on Real Property.—Regardless of the time at which liability for a tax for a given fiscal year may arise or the exact amount thereof be determined, the lien for taxes levied on a parcel of real property shall attach to the parcel taxed on the date as of which property is to be listed under G.S. 105–285, and the lien for taxes levied on personal property shall attach to all real property of the taxpayer in the taxing unit on the same date ...

(b) Lien on Personal Property.—Taxes levied on real and personal property (including penalties, interest, and costs allowed by law) shall be a lien on personal property from and after levy or attachment and garnishment of the personal property levied upon or attached.

N.C.GEN.STAT. § 105–355.

In North Carolina the obligation to pay personal property taxes arises on the assessment date, but the taxing authority must first levy to obtain a lien.

The City also relies upon *In re Columbia Gas Transmission Corp.*, 37 F.3d 982 (3rd Cir.1994). This was an administrative expense case. The Court held that in West Virginia, property taxes are incurred upon the date of assessment. However, the case makes no mention of when a lien is created upon personal property. That question is answered by *Equibank, N.A. v. Wheeling–Pittsburgh Steel*, 884 F.2d 80 (3rd Cir.1989). In that case, the Third Circuit held that for bankruptcy code purposes, a lien is created on personal property by the act of distraint. *In re Equibank NA*, 884 F.2d at 84. Like Virginia, West Virginia does not use the word "lien" in their personal property taxes statutes. The statute is strikingly similar to Virginia's.

The sheriff may, as soon as taxes become delinquent, distrain any goods or chattels in the county belonging to the person or to the estate in land assessed with the taxes. If such good or chattels are about to be removed from the coun-

ty, the sheriff may distrain even before delinquency . . .

W.Va.Code § 11A–2–3.

The Third Circuit based its reasoning upon the case of *George F. Hazelwood Co. v. Pitsenbarger*, 149 W.Va. 485, 141 S.E.2d 314 (1965). The West Virginia Supreme Court held, "It is true that there is no lien denominated as such on personal property after assessment thereof for taxation, but Code, 11A–2–3, as amended, provides that the sheriff may distrain for delinquent "taxes" any goods and chattels belonging to a person assessed and Code, 11A–2–5 provides for applying the distraint to col-lect taxes assessed against goods and chattels, even though they have been transferred to another person." *Pitsenbarger*, 149 W.Va. at 489, 141 S.E.2d at 317.

The City argues that two Virginia Supreme Court cases, *Drewry v. Baugh & Sons*, 150 Va. 394, 143 S.E. 713 (1928) and *Chambers v. Higgins*, 169 Va. 345, 193 S.E. 531 (1937) support its claim of a lien on Tultex's personal property. The City points to a particular statement in *Drewry* to support this assertion. "[T]here is a lien on each specific piece of personal property for the taxes and levies due thereon." *Drewry*, 150 Va. at 401, 143 S.E. at 715. However, the *Drewry* case should not be given much weight. In addition, a careful analysis of *Chambers*, reveals that the holding supports the position of the Indenture Trustee.

In *Drewry*, a peanut farmer, Gillette, did not pay his 1925 taxes. On June 15, 1926, the county treasurer settled with the Auditor of Public Accounts for the 1925 taxes. On January 3, 1927, a creditor obtained judgment against the farmer. On the 12th and 18th of January 1927, the county treasurer levied upon the farmer's property. The Virginia Supreme Court held that the lien of the creditor was superior to the lien created by the levy of the treasurer. The Court said, "It is true that taxes due upon real estate constitute a lien thereon and that they may be collected by distress or by suit in equity. But we find no provision

in the statute which gives a lien on all of the taxpayer's personal property for the amount of taxes due by him. Such a lien can be acquired only by distraining or levying upon the property; except there is a lien on each specific piece of personal property for the taxes and levies due thereon." *Id.* The Court went on to hold, "This execution was a lien on Gillette's goods and chattels from the moment it went into the officer's hands to be levied, and has priority over the lien which the treasurer acquired by his levy for taxes." *Drewry*, 150 Va. at 403, 143 S.E. at 715.

In *Chambers*, the bank had a first lien on some pool tables which passed to the trustee when the bank liquidated. The trustee decided to sell the pool tables, but before the sale, the city treasurer levied upon the pool tables to collect taxes. The proceeds from the sale were then placed into escrow. The city was owed $277.00 for the 1931 through 1936 personal property taxes on the pool tables. The Virginia Supreme Court gave the city treasurer priority over the trustee for the proceeds. The Court said, "To collect these claims a levy was made on them. *That this levy created a lien cannot be questioned.*" *Chambers*, 169 Va. at 350, 193 S.E. at 533 (Emphasis added). The Court said that when goods "have passed out of the possession of the delinquent owner, they are liable only for such specific taxes as have been directly levied against them." *Chambers*, 169 Va. at 350–51, 193 S.E. at 533, citing *Drewry v. Baugh and Sons*, 150 Va. 394, 143 S.E. 713 (1928). The Court said that the trustee's lien could not prevent the levy. "A tax levied against a specific chattel is a paramount lien thereon. Section 381 makes no distinction, so far as mortgages are concerned, between it and a lien established by a levy for all taxes due, save where possession has changes." *Chambers*, 169 Va. at 351, 193 S.E. at 533. "Chattels out of possession may be taken only for taxes assessed thereon." *Chambers*, 169 Va. at 352, 193 S.E. at 534.

The *Drewry* case cannot be given much weight. First, the statute *Drewry* interprets has been modified by the General Assembly. Section § 58.1–3942 demands that goods and chattel be distrained. Distraint is not a remedy to enforce a lien. Distraint is the mechanism for creating a lien.

Second, in *Drewry*, as well as in *Chambers*, the treasurer has already distrained the personal property. Thus the *Drewry* Court's statements regarding liens on specifically assessed property are dicta.

Third, *Drewry* says that there is a "lien on each specific piece of personal property for the taxes and levies due thereon." *Drewry*, 150 Va. at 401, 143 S.E. at 715. Thus, the creation of a lien is tied with the taxes actually being due. Tultex's personal property taxes were not due on January 1, 1999, the assessment date. They were due on December 20, 1999. Thus, even under the reasoning of *Drewry*, no lien could be created until December 20, 1999.

Finally, in *Chambers*, the property that had been distrained, the pool tables, fell into the class of specifically assessed personal property. "There was due $1,579.07. Of this sum $277.57 arose out of direct tax on the tables themselves and there was due to the city and to the State $1,301.50 for licenses." *Chambers*, 169 at 350, 193 S.E. at 533. The Court itself stated that the treasurer's levy **created** the lien. "To collect these claims a levy was made on them. That this levy created a lien cannot be questioned." *Chambers*, 169 Va. at 350, 193 S.E. at 533. Thus, although *Chambers* cites *Drewry*, *Chambers* holds that a levy, i.e. the act of distraint, creates a lien on personal property.

The Court finds that other cases do not support the City's position. These cases held the taxing authority did not have a lien on the personal property in question. See *Jackson Coal & Coke Co. et al. v. Phillips Line*, 114 Va. 40, 75 S.E. 681 (1912) and *City of Richmond v. Bird*, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543 (1919).

In *Jackson Coal*, Phillips Line operated a steamer. Newport News Shipbuilding filed suit in District Court against Phillips Line. The steamer was placed into the hands of the U.S. Marshal by attachment. A few days later, a suit was brought in state court to appoint a receiver to manage the steamer. In order to get the steamer released, the receivers executed a surety with the bondholders. Phillips Line failed and the steamer was sold. The lower court ordered that court costs, receiver's and attorney's fees be paid first, personal property taxes second, the creditors of the receiver third, and finally to the guarantors of the bond. On appeal, the Virginia Supreme Court ruled that the city did not have a lien on the steamer when it went into the hands of the receivers and that the city was a general creditor.

[A]nd it appears that the city of Petersburg had a right of distress against the property assessed with taxes in its favor, which the city might have exercised before the taxes were returned delinquent, or the property upon which they were assessed had passed into the hands of subsequent purchasers, and thereby secured a lien therefor, but these rights were never exercised.

*Jackson Coal*, 75 S.E. at 684.

The reasoning in Jackson Coal was echoed by the United States Supreme Court in *City of Richmond v. Bird*, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543 (1919). In that case a receiver for a bankrupt company was appointed on November 1, 1909. At this time the personal property taxes for the company's 1907, 1908 and 1909 taxes were due. The city did not distrain to collect these taxes. Also on November 1, 1909, the company's landlord levied a distress warrant. The city claimed it had priority over the landlord's lien. The Court disagreed and cited *Jackson Coal* approvingly. *Bird*, 249 U.S. at 176, 39 S.Ct. at 187.

The City asserts *Jackson Coal* and *Bird* can be distinguished from this case. The City argues that the case of *Colonna's*

*Shipyard v. Rowe,* 14 F.2d 267 (4th Cir. 1926) parallels this case and supports the City's position.

In this case, Northumberland County has assessed personal property taxes against a steamship. The county treasurer did not distrain. During admiralty proceedings, the District Court ordered the sale of the steamship. The District Court awarded the county treasurer $420.00 for 1924 personal property taxes out of the proceeds, with the remaining to other creditors. The maritime claimant appealed claiming that the county did not have a lien. The Fourth Circuit affirmed. The Fourth Circuit distinguished *Jackson Coal* and *Bird,* stating, "These cases dealt with delinquent taxes, for which no opportunity had been afforded to make the levy necessary to their collection." *Colonna's Shipyard,* 14 F.2d at 268. Since the steamship was seized in October 1924 and sold on December 22, 1924, there was no opportunity for the county treasurer to distrain for the 1924 taxes, since he could only distrain between December 1, 1924 and June 15, 1925. The Court held that there was a tax lien on the ship. The Court cited no statutes or cases in support of their holding.

*Colonna's Shipyard* has been criticized and has never been favorably cited. The case has been criticized because it goes against common principles of admiralty law. The First Circuit has rejected *Colonna's Shipyard* as erroneous because maritime liens have priority over tax claims in admiralty proceedings. "Two cases have squarely held that a tax claim of the United States is outranked even if it antedates a maritime lien for supplies ... [t]he contrary decision in *Colonna's Shipyard v. Rowe,* 4 Cir., 1926, 14 F.2d 267 is entirely unpersuasive." *United States v. Flood,* 247 F.2d 209, 212 (1st Cir.1957).

*Colonna's Shipyard* has also been criticized by the *Harvard Law Review* and Gilmore & Black, *The Law of Admiralty,* a treatise on admiralty law. "In a recent case the district court reasoned that a federal income tax lien is nonmaritime in nature, and since Congress has not expressed an intention to give it paramount priority, the ordinary rule of priority of maritime liens applies. A contrary decision on somewhat dubious authority held a state claim for taxes superior to maritime liens." *Priorities of Maritime Liens,* 69 Harv.L.Rev. 525, 532 (Jan.1956). "In view of the court's failure to discuss, or apparently even to recognize, the difficult problems of law involved, the Colonna's Shipyard case cannot be given much weight." Gilmore & Black, *The Law of Admiralty,* 762 (2d Ed.1975). "[T]he proposition that tax and other governmental claims, being nonmaritime, are subordinate to maritime liens of all kinds [is accepted and] ... [t]he issue has, indeed, almost disappeared from litigation ..." *Id.* at 764.

*Colonna's Shipyard* was decided in 1926. The Fourth Circuit attempted to determine Virginia personal property law in the context of admiralty proceedings. However, in 1937, the Virginia Supreme Court in *Chambers,* clearly stated the law on point. This Court concludes that because *Colonna's Shipyard* was decided prior to *Chambers,* this Court must follow the state count's interpretation of its own law. The Court therefore holds that the City did not acquire a lien on Tultex's personal property because Virginia law demands that the taxing authority distrain the property to obtain a lien.

The Court must now determine whether it should grant the City's motion for relief from stay. Section 362(d) states,

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The City does not meet the requirements of § 362(d)(1) because as a general unsecured creditor, it does not have an interest in Tultex's personal property. "Section 362(d)(1) is only one of a series of provisions in the Bankruptcy Code dealing with the rights of secured creditors." *United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). General unsecured creditors do not have an interest in property and thus are not entitled to relief from stay. See *In re Hollar v. United States,* 188 B.R. 539, 541 (M.D.N.C.1995). Furthermore, although Tultex probably does not have any equity in the personal property, such property is necessary for reorganization. A liquidating Chapter 11 case can meet the effective reorganization requirement of § 362(d)(2) so long as it is not a single asset case. See *In re Lake Ridge Assoc.,* 169 B.R. 576, 578 (E.D.Va.1994) (the debtor's intent to liquidate its assets does not necessarily preclude the debtor from offering a valid reorganization plan); *In re Planned Systems, Inc.,* 78 B.R. 852 (Bankr.S.D.Ohio 1987) (the liquidation plan is encompassed within the meaning of "effective reorganization"); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 808 F.2d 363, 371 n. 14 (5th Cir.1987) (en banc), *affirmed* 484 U.S. 365, 376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("[T]here may be circumstances under which the debtor is able to satisfy the 'effective reorganization' test of 362(d)(2) by showing that the property at issue is necessary to an effective liquidation of the debtor under Chapter 11, as distinguished from an effective rehabilitation of the debtor").

■ The final argument by the City is that it asserts that it can now distrain Tultex's personal property without a violation of the automatic stay pursuant to 11 U.S.C. § 362(b)(18). Section 362(b)(18) is an exception to the automatic stay for the "creation or perfection of a statutory lien for an ad valorem property tax imposed by the District of Columbia, or a political subdivision of a State, if such tax comes dues after the filing of the petition." The Court finds that this argument is irrelevant. Even if the City is permitted to distrain under this section to create a lien, this lien would be junior to the lien of the Indenture Trustee and the Bondholders. The Court finds that the principle of "first in time, first in right" applies. See *IRS v. McDermott,* 507 U.S. 447, 448, 113 S.Ct. 1526, 1527, 123 L.Ed.2d 128 (1993) and *Bryant v. U.S. Dep't of Agriculture,* 227 B.R. 89, 93 (W.D.Va.1998), *affirmed* 181 F.3d 86 (4th Cir.1999). The Bondholders perfected their lien on May 1, 1999. Any act by the City to distrain Tultex's personal property now could not prime the Bondholder's lien.

The Court holds that the City is not entitled to relief from the automatic stay. As such, the City's motions for Relief from Stay and to Prohibit the Sale of Property are DENIED.

Upon entry of this Order the Clerk shall forward copies of this Order to Howard Beck, Esquire, Jonathan B. Alter, Esquire, counsel for the Indenture Trustee; Robert J. Burr, Esquire, counsel for the City of Martinsville, Bruce H. Matson, Esquire, counsel for Tultex, A. Carter Magee, Esquire, counsel for the Official Committee of Unsecured Creditors, and to James G. Cosby, Esquire, Office of the United States Trustee.

IT IS SO ORDERED.