**In re RICKETTS CONSTRUCTION COMPANY, INC., Debtor.**

No. 08–50174.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

Dec. 14, 2010.

Ricketts Construction Co., Inc., Winchester, VA, pro se.

W. Stephen Scott, Charlottesville, VA, for Petitioning Creditors.

**514**

Michael E. Hastings, LeClair Ryan Flippin Densmore, Richard Daniel Scott, Law Office of Richard D. Scott, George A. McLean, Jr., Roanoke, VA, for Trustee.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

A hearing was held on April 21, 2010, to consider the Chapter 7 Trustee's Motion to Approve Compromise under Rule 9019 and Approve Settlement Involving Claims Asserted by Fidelity and Deposit Company of Maryland ("Motion to Approve"), filed on December 14, 2009. The Court also considered the City of Winchester's Objection to the Motion to Approve ("Objection"), filed on December 31, 2009. After considering the arguments of the parties, the Court makes the following findings of fact and conclusions of law.

### Background

The City of Winchester ("City") contracted with Ricketts Construction Co. ("Debtor") for the construction of the Senior Center Addition to the War Memorial Building in Winchester. Fidelity Company of Maryland ("Fidelity") served as surety on this contract. When the Debtor defaulted, Fidelity assumed the construction contract. Debtor entered bankruptcy on February 29, 2008. Thereafter, all payments for the construction of the Senior Center were invoiced by Fidelity to the City.

The City filed a claim for $185,412.75 in delinquent motor vehicle taxes that accrued in 2006 and 2007.[1] The City did not request set-off of the tax obligation against its contractual obligation to the Debtor/Fidelity on the Senior Center addition.

On or about March 11, 2008, the City received an invoice from Fidelity for an overpayment related to work done by the Debtor on a project unrelated to the Senior Center Addition. The invoice totaled $36,021.60. The City contacted the Chapter 7 Trustee for Ricketts and, at the suggestion of the Trustee, forwarded a check to the Trustee for the invoiced amount (herein the Fund). This check was to be held by the Trustee pending a determination of its distribution between the Debtor's estate and Fidelity.

On October 21, 2009, the check expired. Thereafter, the Fund was forwarded by the City to the Virginia Department of Treasury Department of Unclaimed Property (herein the Commonwealth). Subsequent to the transfer to the Commonwealth, the Trustee has filed the Motion to Approve Compromise now before the Court which, if granted, will release $5,000.00 to Fidelity and the remaining $31,021.60 will be retained as property of Debtor's estate. In conjunction with the proposed compromise, the Trustee requests that this Court enter an Order requiring the Department of Unclaimed Property to release the funds to him. The City has objected to the proposed distribution and the request for re-issuance, claiming, for the first time, to have a recoverable interest in the funds based upon its claim for delinquent motor vehicle taxes.

### Discussion

The Trustee concedes that the City has a lien against the Debtor's motor vehicles for assessed taxes. The City also has a priority unsecured claim for any deficiency on those motor vehicles. *See* 11 U.S.C. § 507(a)(8)(B) (giving a priority unsecured claim to "a property tax incurred before the commencement of the case and last

---

1. This claim was unrelated to the contract between the city and the Debtor for the Senior Center addition.

payable without penalty after one year before the date of the filing of the petition"). However, the City argues that it has a tax lien on the Fund under Virginia law or, in the alternative, that it is entitled to set-off its claim against the Fund. For the following reasons, the Court finds that the City does not a lien for taxes on the Fund or a right of set-off.

### A. Tax Liens Under Virginia Law

■ State law determines whether the City has a statutory tax lien on the Fund. *See City of Martinsville v. Tultex Corp. (In re Tultex Corp.)*, 250 B.R. 560, 562 (Bankr.W.D.Va.2000) ("The determination of whether the City has a lien on the property is a matter of state law. Since Tultex's personal property is located within the Commonwealth of Virginia, the Court will look to Virginia law." (citations omitted)). In the case at bar, the Fund is located in Virginia; therefore, Virginia law applies. In Virginia, "[a]ll taxes shall be levied and collected under general laws." Va. Const. art. X, § 1; *see also Drewry v. Baugh & Sons, Inc.*, 150 Va. 394, 398, 143 S.E. 713, 714 (1928) ("The Virginia Constitution ... provides that all taxes shall be levied and collected under general laws. It follows that there are no liens for taxes except as provided by statute."). The City's tax lien—if it has one—must spring from a statutory provision.

The Code of Virginia provides two methods to obtain a tax lien on personal property: (1) collection by distress and (2) assessment of taxes. The City advances both of these methods in support of its position.

### 1. Collection by Distress

■■■ The City contends that the Fund "should be treated as distrained." Distress is a legal process for collection of an obligation: It enables the City treasurer to seize the Debtor's property to recover taxes. Va.Code Ann. § 58.1–3919. Section 58.1–3941 authorizes the use of distress by the treasurer and the sheriff for the collection of delinquent taxes. The treasurer may distrain all of the Debtor's personal property—even property not assessed for taxes. Va.Code Ann. § 58.1–3941; *see also Chambers v. Higgins*, 169 Va. 345, 350, 193 S.E. 531, 533 (1937) ("Any goods or chattels in the possession of a taxpayer may be levied upon for all taxes due by him. It is not necessary that resort be had to each individual item taxed."). For unassessed property, seizure creates a lien in the distrained property.[2]

The key to the City's lien priority under the distress provision of the Virginia Code, therefore, is the statutory procedure requiring seizure. The City, however, never seized the Fund in question. Instead, the City delivered the Fund first to the Chapter 7 Trustee, and, upon expiration of the check made payable to him, to the Commonwealth. The City, therefore, has not obtained a lien by distress.

### 2. Assessment of Taxes

■ In the alternative, the City contends that it obtained a universal lien on the Debtor's property (including the Fund) because the Debtor failed to pay motor vehicle taxes. In support of its claim, the City cites the General Assembly's revision

---

2. The Code of Virginia does not address specifically when the lien arises. By implication, however, the lien arises after the property has been seized through distraint. *See* Va.Code Ann. § 58.1–3942(C) ("A security interest perfected prior to any distraint for taxes shall have priority over all taxes...."). Since prior interests would have priority until distraint, the statutory language suggests that a lien in unassessed property arises at the moment of distraint. This interpretation is consistent with the Court's decision in *Chambers*. *See* 169 Va. at 352, 193 S.E. at 534 (acknowledging that there was no lien on the debtor's property until it had been seized).

to section 58.1–3942 of the Code of Virginia. Section 58.1–3942(C) currently provides that "[t]axes specifically assessed either per item or in bulk against goods and chattels shall constitute a lien *against the property so assessed* and shall have priority over all security interests" (emphasis added).[3] This statute gives the City a lien against the Debtor's motor vehicles which were assessed a tax by the City. The statutory language and Virginia's construction of tax statutes, however, do not expand the reach of this lien to all of Debtor's property.

If the General Assembly had intended to create such a universal lien, it would not have limited scope of the lien to "the property so assessed." *Cf.* 26 U.S.C. § 6321 (providing a federal tax lien "upon all property and rights to property" of any person who neglects or refuses to pay any federal tax). Although the General Assembly permitted "assessments in bulk," this practice is defined narrowly. Section 58.1–3942(C) provides that, "[f]or the purposes of this section, taxes specifically assessed in bulk means an assessment against the specific class of property distrained." An assessment in bulk, therefore, might create a lien on all of the Debtor's motor vehicles, but not all of the Debtor's property.

 In addition, Virginia courts strictly construe the power to tax. In *Tultex*, the Court remarked that " 'statutes imposing taxes are to be construed most strongly against the government, and in favor of the citizen, and are not to be extended beyond the clear import of the language used. Whenever there is just doubt, the doubt should absolve the taxpayer from his burden.' " 250 B.R. at 564 (citing *City of Winchester v. American Woodmark Corp.*, 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). The clear import of section 58.1–3942(C) is to create a lien in the assessed property—not all of the Debtor's property. Therefore, the Code of Virginia does not permit the City to obtain a lien against the Fund by assessing taxes against the Debtor's motor vehicles.[4]

## B. Availability of Set–Off

The City claims entitlement to the funds under a theory of set-off of the Debtor's $185,412.75 obligation for delinquent tax payments. Based on the facts before the Court, set-off is not available under the Bankruptcy Code. Additionally, the City waived any right to set-off.

### 1. Prerequisites of Set–Off

 Bankruptcy law does not create the right of set-off; set-off is a function of state law. *See, e.g., Copperthite Pie Corp. v. Whitehurst*, 157 Va. 480, 483, 162 S.E. 189, 189 (1932) ("Set-off . . . was recognized in equity from early times."). Sec-

---

3. In *Tultex*—the impetus for the 2001 revision—the Bankruptcy Court for the Western District of Virginia noted that the word "lien" was absent from section 58.1–3942. *See* 250 B.R. at 563. As a result, the Court held that "the City did not acquire a lien on Tultex's personal property because Virginia law demands that the taxing authority distrain the property to obtain a lien." *Id.* at 568. The Court did not address, however, the scope of a lien arising from the assessment of taxes.

4. It is of interest to note that the City cannot assess a tax against the funds in question. Section 58.1–1100 states that only the Commonwealth may tax items of intangible personal property. Section 58.1–1101 classifies "money; bonds, notes and other evidences of debt; [and] demands and claims" as intangible personal property. A check qualifies as an "other evidence of debt." *See Fourth Nat'l Bank of Montgomery v. Bragg*, 127 Va. 47, 102 S.E. 649, 651 (1920). Therefore, the funds in question are intangible personal property and are not subject to assessment by the City.

tion 553(a)[5] of the Bankruptcy Code, however, recognizes three elements required in order to assert set-off: (1) The creditor must hold a claim against the debtor that arose before the commencement of the case; (2) The creditor must owe a debt to the debtor that also arose before the commencement of the case; and (3) The claim and the debt must be mutual. *See Moore v. HUD (In re Moore)*, 350 B.R. 650, 653 (Bankr.W.D.Va.2006); *Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.)*, 98 B.R. 243, 248 (Bankr.E.D.Va.1989).

As discussed above, the City has a valid claim against the Debtor for delinquent motor vehicle taxes. That claim arose before the filing of the petition. The City's claim satisfies the first element of set-off.

▮ On the other hand, the City's debt does not appear to satisfy the second element. The parties agree the debt of the City arose before commencement of the case. The Trustee, however, argues that the City owed its debt to Fidelity. The Trustee points to the facts that Fidelity sent the invoice and the City made the check payable to Fidelity. During oral arguments, the Trustee explained,

> It was on a separate transaction, separate building, there was an overpayment. A check was cut by Winchester back to Fidelity, the bonding company.... [T]he check was literally being held by me until we resolved the issue between the trustee and Fidelity as to how much money came back from those funds.

The Court notes that in a letter to Fidelity concerning payment of the $36,021.60, the City acknowledges that Fidelity might claim the funds pursuant to its performance bond. Furthermore, in the City's

Memorandum of Authority, it only seeks the $31,021.60 allocated to the Debtor—acknowledging that Fidelity has some claim to the balance of the Fund. The City contends, however, it paid a debt to the Debtor. At oral arguments, the City argued that "[i]t was by no means an overpayment by the bonding company who had absolutely no right to collect on behalf of the debtor in this case.... It was erroneous invoicing by Fidelity." Nothing outside of the City's statement supports this conclusion. The Court finds that Fidelity had overpaid the City under its performance bond obligations and that the City recognized the validity of Fidelity's overpayment claim and issued Fidelity a check for the overpayment. The Court holds that the City fails the second prong of set-off.

▮ The final element springs from the first two. Courts have found a mutuality of debt when "the creditor is indebted to the debtor who likewise owes a debt to the creditor." *In re A & B Homes*, 98 B.R. at 248. In this case, the City owed Fidelity, Fidelity acted as a surety for the Debtor, and the Debtor owed the City. This arrangement cannot satisfy the mutuality requirement. *See In re Moore*, 350 B.R. at 654 ("The mutuality of debt requirement specifies that the claim and off-setting debt must be between the same parties.... [T]his court has strictly construed the mutuality requirement to exclude triangular setoffs by third parties from eligibility under § 553."). Because the City does not have a debt eligible for set-off, it cannot recover the Fund.

### 2. Waiver of Set–Off

▮ Even if set-off is available under the Bankruptcy Code, a court "gener-

---

**5.** The relevant portion of § 553(a) provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."

ally looks to the equities to determine if the setoff should be allowed." *Lambert v. Callahan (In re Lambert Oil Co.),* 347 B.R. 508, 520 (W.D.Va.2006). In this case, the City cannot exercise set-off because it failed to timely assert its right and took actions inconsistent with that right.

■ Set-off "is not automatic or self-executing . . . but must be timely asserted by the creditor." *Blanton v. Prudential–Bache Sec. (In re Blanton),* 105 B.R. 321, 333 (Bankr.E.D.Va.1989); *see also In re Britton,* 83 B.R. 914, 919 (Bankr.E.D.N.C. 1988). In *In re Britton,* the court concluded that asserting set-off after the proof of claim was not timely. *See* 83 B.R. at 920 ("The filing of the proof of claim without asserting the right to set off is a voluntary waiver of the right to set off its debt."). The City made no request for set-off when it filed its claim. Nor did the City mention set-off when it paid the invoice of Fidelity. In fact, the City only began to argue for set-off under the Bankruptcy Code once this Court requested a Memorandum of Authorities. The City's assertion of set-off, therefore, is not timely.

■ Furthermore, a voluntary transfer to the bankruptcy estate generally constitutes a waiver of set-off. *See, e.g., United States v. Ruby (In re Grannan),* 277 B.R. 673, 675 (Bankr.E.D.Va.2002) ("[A] waiver of setoff may arise when 'the creditor released the funds against which the setoff could be made before asserting any right of setoff, in court or otherwise.'"); *see also In re Litchfield Constr. Mgmt., Inc.,* 137 B.R. 98, 99 (Bankr. D.Conn.1992) (denying bank's attempt to assert set-off six months after transferring debtor's bank balance to trustee). The City promptly paid Fidelity's invoice, and then it delivered the Fund to the Trustee. Although the City contends that it never completely transferred the Fund, the Trustee appropriately notes that the City has taken several actions inconsistent with its intent to maintain set-off: the City wrote the check to Fidelity, it transferred the check to the Trustee, and it allowed the Fund to revert to the state under the Unclaimed Property Act. The City's voluntary transfer suggests that it has waived its right to set-off.

The combination of the City's untimely assertion of set-off and its voluntary transfer suggest that the City waived any right to set-off.

### Conclusion

For the reasons stated above, the Court finds that the City cannot maintain a lien against the Fund under any statutory provisions of the Virginia Code. Furthermore, the City does not have a debt that qualifies for set-off and waived its right to assert set-off. Accordingly, the Court finds that the City's Objection is not well taken and, there being no other objection or opposition to the motion, the Trustee's Motion to approve is hereby granted. Accordingly, it is

### ORDERED

That the Trustee's Motion to Approve Compromise Under Rule 1019 and Approve Settlement Involving Claims Asserted by Fidelity Deposit Company of Maryland is **GRANTED.** It is

### FURTHER ORDERED

That the Virginia Department of Treasury Division of Unclaimed Property is to reissue the check to the Chapter 7 Trustee for $36,021.60 and the City of Winchester is directed to take all steps necessary to accomplish the delivery of the Fund to the Trustee.

Copies of this Order are directed to be sent to the Chapter 7 Trustee, George A. McLean, Esquire; and to counsel for the

City of Winchester, Anthony C. Williams, Esquire.